[No. 1031. Decided January 5, 1894.]

CHARLES S. DEWING, *Appellant*, v. EDWARD G. CRUEGER AND ANNA C. CRUEGER, *Respondents*.

MORTGAGE DEBT — ACTION ON NOTE — EFFECT OF SURRENDER OF PREMISES TO GUARANTOR — AGENCY.

The surrender by a mortgagor of the possession of mortgaged premises to the mortgagee, under a power of sale contained in the mortgage, constitutes no defense to an action on the note by an assignee of the note and mortgage, when the mortgagee has no authority to act as agent of the assignee.

Agency, in such case, is not established by the fact that the mortgagee, who had guaranteed the prompt payment of the coupon notes, continued to collect interest after the assignment, and transmit it to the office where payable by the terms of the notes; nor does the guaranty by the mortgagee have the effect of constituting the guarantor the agent of the owner, nor is he thereby authorized to take any steps which the owner of the note and mortgage himself could take.

*Appeal from Superior Court, Snohomish County.*

*A. W. Frater*, for appellant.

*Frank F. Randolph*, for respondents.

The opinion of the court was delivered by

STILES, J.—Appellant brought suit to recover upon a promissory note and certain interest coupons made by respondents when residing in the Territory of Dakota. The note was made to the Security Investment Company of Yankton, as payee, by which corporation it was indorsed to appellant before maturity; by its terms it was made payable (as were the coupons also) at the office of the American Loan and Trust Company, Boston, Mass., and was to be construed, in all respects, by the laws of Dakota.

The answer set up some matters which tended to establish an equitable defense to this action, viz.: The transaction evidenced by the note and coupons was a loan of money by the Security Company to respondents, upon a long time mortgage of real estate. The mortgage was set out in the pleading, and contained a power of sale under which, at the option of the mortgagee, or its assignee, in addition to the usual right of mortgagees to sue on the debt, or proceed by strict foreclosure, possession of the mortgaged premises could be taken, and the same could be sold for the debt, interest, taxes, insurance, costs, etc., the surplus, if any, to be rendered to the respondents. By the same instrument the Security Company was constituted the agent of the respondents to effect such a sale and convey title to the purchaser, with power to appoint an agent or a substitute, and this power of attorney was declared to be irrevocable.

It was further alleged that the appellant, in September, 1888, demanded possession of the mortgaged lands, and that respondents surrendered the same to him *in full payment* and satisfaction of the note and coupons. Now, if it could be established that such a surrender of the mortgaged real estate had been made upon a distinct agreement that it should be *in satisfaction* of the debt, it would, of

course, be inequitable that appellant should now maintain an action upon the note, although no conveyance had been executed. He could have specific performance of that contract by tendering the note and coupons, and compel the execution of a proper deed. But the evidence disclosed no such state of facts; on the contrary, respondents claimed at the trial that they never knew of the existence of appellant or of his having the note, but always supposed until this action was commenced that the Security Company was the owner and in possession of it.

Their case did, however, develop another state of facts, which would also have been sufficient to suspend appellant's right of action on the note if he had been connected with the transaction by proper evidence, for it was shown that the Security Investment Company did demand and receive possession of the mortgaged land. Without any proof in the record, however, that there was an express agreement that this possession was to be received in satisfaction of the debt, it must be presumed that such possession was demanded and received in accordance with the power of sale contained in the mortgage, and not otherwise. But if there was such a possession taken at the instance of the appellant, or with his knowledge or assent, for his benefit, whether he knew it before or after the fact, there ought to be no judgment on the note until after sale in accordance with the terms of the power. Having elected his remedy by sale, appellant would have been bound to proceed in that course until the land was exhausted and a deficiency resulted. Such is the general rule of law, and such, we understand from the citations given, was the statute of Dakota, as it is in this state.

Appellant proved that he had taken his assignment of the note and mortgage within a month of their execution, in July, 1887; but respondents showed that they had never had any dealings with appellant, and did not know

him to be in any way connected with their note and mortgage. They invariably received notice of the maturity of the interest coupons from the Security Company, paid their money to it, and received from it the canceled coupon, and thus traced a connection between appellant and the Security Company.

On the other hand, appellant declares that he never appointed the Security Company as his agent for any purpose whatever, and did not know that it was acting in any such way. But it is easy enough to understand how it came about that the company made the collections. The coupons were payable at the office of the Trust Company in Boston, and it was respondents' duty to remit their money there to meet them. The Security Company had guaranteed the prompt payment of these coupons, and therefore it sent out notices urging payment to it nine days before the maturity of each coupon. These notices put the matter more strongly than the law of the case warranted, for they implied that the money must be paid to the sender, whereas, there was nothing to prevent the respondents from remitting their money directly to the Trust Company. In making these payments to the Security Company, however, respondents merely availed themselves of its voluntary services in transmitting their money to the place of payment, and made it their own agent for that purpose. It was appellant's duty to present his coupons at the office of the Trust Company, and if they were paid it did not concern him by what means the money arrived there. He surrendered his coupons to the Trust Company, and had no more concern about the matter.

In addition to this, the notices sent to respondents by the Security Company contained upon their face a statement that the note and mortgage belonged to other parties, and that it had no authority to waive any condition contained therein.

38—7 WASH.

Having thus been warned that the payee of the note was no longer the owner of it, respondents were bound to see that in all their dealings with the Security Company it was acting within the scope of its apparent authority, if they proposed to claim that it was the agent of the owner. The mortgage did not purport to give it authority to take possession of the land unless it was the owner of the note at the same time; nor could it, unless it was such owner, of its own motion, proceed to make a sale and conveyance of the mortgaged premises. Whoever might own the note, if he saw fit to take possession and make use of the power of sale, he himself must demand and take such possession, or appoint an agent specially therefor, and not until he demanded it to proceed could the Security Company make a legal sale. All this the respondents were bound to know when asked to surrender possession. They should have required the production of authority for making the demand, and when it was not forthcoming they should have refused to surrender. If the note and mortgage re-assigned to the Security Company had been exhibited, that would have justified them in treating it as the owner, and making any terms agreeable to themselves, even to a satisfaction of the debt, when the note would have been surrendered. But, as it was, they dealt with a mere volunteer, for whose acts appellant was in no wise responsible under the evidence.

Respondents make the point that, because the Security Company guaranteed the prompt payment of the coupons, and the payment of the principal within one year after maturity, it was thereby, *ex vi termini*, constituted the agent of the owner, and had such an interest in the matter as would authorize it to take any steps which the owner himself could take. This position is apparently drawn from that rule of law which allows a guarantor to require the creditor to proceed with diligence to exhaust the debtor,

or to pay the debt and be subrogated to the rights of the creditor. But the theory propounded has not received the countenance, or even the consideration, of courts, so far as we are aware, and it would certainly be a novelty in the law of guaranties.

We are of opinion that the court below ought to have granted appellant's motion to direct the jury to bring in a verdict for the amount claimed; therefore the judgment is reversed, and the cause remanded with instructions to enter judgment for appellant without further trial.

DUNBAR, C. J., and HOYT, SCOTT and ANDERS, JJ., concur.