[No. 13439. Department One. June 23, 1916.]

FREDERICK S. EASTON, *Respondent*, v. MABEL GANS LITTOOY, *Appellant*.[1]

PRINCIPAL AND AGENT — APPARENT AUTHORITY — COLLECTION OF NOTES—PLACE OF PAYMENT—POSSESSION. Where mortgage coupon interest notes were made payable at the office of agents, it was the duty of the mortgagee to have the coupons there when due, and the mortgagor may assume that the agents are authorized to receive payment, although the coupons were not surrendered at the time of payment, where the agents had been in the habit of demanding and receiving such payments without having possession of the coupons.

SAME—AUTHORITY OF AGENT—RATIFICATION—ESTOPPEL. A mortgagee who failed to immediately repudiate the authority of agents who had been in the habit of receiving payment of interest coupons without possession of the coupons, upon notice that they had demanded and received a payment, but waited some time for remittance from them until they became bankrupt, is estopped to dispute the agency.

MORTGAGES—FORECLOSURE—PREMATURE ACTION—MATURITY OF DEBT. An action to foreclose a mortgage will not be dismissed as prematurely brought, where the mortgagor had given notice to accelerate maturity, tendering unpaid matured interest and principal, and the contest waged was as to whether the debt was paid by the several tenders which had been declined owing to a *bona fide* dispute as to the authority of agents to receive one of the payments.

MORTGAGES — DISCHARGE — TENDER. Although a tender by the mortgagor will discharge the lien, a court of equity will not declare a forfeiture of the lien where refusal of the tender was not unrea-

[1]Reported in 158 Pac. 531.

sonable on account of a *bona fide* controversy as to a payment made to an agent, and a discharge of the lien would work a discharge of the debt.

INTEREST—SUSPENSION—TENDER.   Tender of the principal of a mortgage before suit, stops subsequent interest.

MORTGAGES—FORECLOSURE—ATTORNEY'S FEES—TENDER OF DEBT. Attorney's fees cannot be allowed on the foreclosure of a mortgage where the suit was the result of the mortgagee's mistake in refusing a tender.

Appeal from a judgment of the superior court for Pierce county, Clifford, J., entered January 15, 1916, in favor of the plaintiff, upon an agreed statement of facts, in an action to foreclose a mortgage.   Modified.

*T. W. Hammond,* for appellant.

*Chapman & Bailey,* for respondent.

ELLIS, J.—Action to foreclose a mortgage for default in payment of interest.   The sole defense was payment of the first coupon alleged to be in default and discharge of the others and of the principal note by tenders when due, wrongfully rejected.   The cause was tried on stipulated facts. On September 1, 1908, one Mary M. Gans, mother of defendant, Mabel Gans Littooy, executed and delivered to one M. L. Bevis her note for $2,500, due January 1, 1918, with ten interest coupons attached, each, save the first, being for $175, and maturing, respectively, January 1 of each year after date.   The note and coupons were by their terms payable with New York exchange at the office of Bevis Brothers, in Spokane, Washington.   The note contained the usual provision for acceleration of maturity on default of interest, and also gave the maker the option of paying the principal on any interest date on and after January 1, 1914, on thirty days' notice.   The mortgage was given to secure the note and interest and was soon after assigned to plaintiff, who resides at Lowville, New York, and who still holds it.   The assignment was duly recorded.   In March, 1910, Mrs. Gans,

by a deed of gift, conveyed the mortgaged premises to defendant, Mabel Gans Littooy, who still owns the property. The first coupon was paid by Mrs. Gans to Bevis Brothers, in response to a notice from them, prior to January 1, 1909, and the coupon was subsequently surrendered by them, Mrs. Littooy having knowledge of the facts at the time. On December 1, 1909, Bevis Brothers mailed to Mrs. Gans at Tacoma the following notice:

"The interest on your loan of $2,500 will mature January 1, 1910. The amount due at that time will be $175, which please remit to us promptly so that the eastern lender may receive it on the day it falls due. Be sure to send New York or Chicago draft, otherwise add 25 cents to cover cost of exchange. Interest at the rate of 10% will be charged on all delinquent payments. The coupon will be mailed to you as soon as it is received from the east. Please pay your taxes before they become delinquent.      Bevis Brothers."

On receipt of this notice, Mrs. Gans showed it to Mrs. Littooy, and through her procured a New York draft for the $175 and mailed it to Bevis Brothers at Spokane. Later, with the knowledge of Mrs. Littooy, this coupon was also surrendered to Mrs. Gans by Bevis Brothers. On August 2, 1910, Mrs. Gans died, leaving a will devising the mortgaged property to Mrs. Littooy, who was appointed and qualified as executrix. Plaintiff never presented any claim against the estate, which has long since been settled. He now has no personal claim against any one for the amount of the debt. On December 1, 1910, Bevis Brothers mailed another notice addressed to Mary M. Gans at Tacoma, Washington, couched in similar terms to that above, save as to date, and requesting payment of the coupon maturing January 1, 1911. This notice was received by Mrs. Littooy, who, on December 15, 1910, remitted to Bevis Brothers at Spokane $175, New York exchange, and a few days later received their receipt for it. She has never received the coupon. On February 6, 1911, plaintiff wrote a letter addressed to Mrs.

Gans, which was in due course received by Mrs. Littooy, stating that he owned the notes and mortgage and demanding payment of this coupon. This conveyed the first actual knowledge to Mrs. Littooy of the fact that plaintiff held the note, coupons and mortgage and of his address. In response, both she and her attorney wrote to plaintiff advising him that she had sent the interest "to your agents Bevis Bros. of Spokane on December 15, 1910, by New York draft"; that she held their receipt for that amount; that she had received no notice to pay any other person, and had sent the money to Bevis Brothers, as she had the prior interest.

On April 14, 1911, plaintiff wrote to Mrs. Littooy's attorney stating that he had written to Bevis Brothers asking them to forward the money for the coupon, expressing the belief that he would soon receive it, and stating that, if not received within a reasonable time, he would so advise in order that Mrs. Littooy might proceed to compel Bevis Brothers either to return the money or send the coupon, also stating that plaintiff always kept coupons on loans until the drafts to pay them were received. Correspondence of the same tenor on both sides continued, and on August 8, 1911, plaintiff wrote to Mrs. Littooy for the first time repudiating her and her attorney's assumption that Bevis Brothers were his agents and asserting that he had never authorized them to collect for him any interest coupon. Meantime Bevis Brothers had been declared bankrupt. Thereafter, prior to the maturity of each of the coupons maturing January 1, 1912, and January 1, 1913, Mrs. Littooy, through her attorney, offered to pay them if sent to some designated place in the state of Washington. Each of these offers plaintiff refused unless she would pay, not only the current coupon, but that of 1911. On August 26, 1913, Mrs. Littooy, through her attorney, wrote to plaintiff demanding that he present to her the principal note for $2,500 through some bank or person in Tacoma or at any place of convenient access in the

state of Washington, in which event she would pay the note, together with interest thereon subsequent to January 1, 1913. Plaintiff replied, recognizing defendant's right to pay the principal debt on January 1, 1914, together with all accrued interest, and again stating that, if she would pay the coupons maturing respectively January 1, 1911, 1912, 1913 and 1914, as well as the principal, he would forward all these with a satisfaction of the mortgage to some bank at Tacoma where they could be paid. This she refused, and this suit followed. Defendant husband, disclaiming any interest, was dismissed. The trial resulted in a decree of foreclosure for the full amount claimed. Defendant appeals.

In response to the claim that the first coupon was paid by the remittance to Bevis Brothers, respondent invokes the general rule that one paying a note to a person assumed to be the agent of the owner is only protected by demanding and receiving the note, citing, *Dewing v. Crueger,* 7 Wash. 590, 35 Pac. 393, and *Western Security Co. v. Douglass,* 14 Wash. 215, 44 Pac. 257. But in each of those cases the money was paid to the alleged agent, not at the place where by its terms the note was payable, but with the express understanding that it was to be transmitted by the alleged agent to the designated place of payment. The distinction is plain. In the case here, it was as much the respondent's duty to have the coupons at their place of payment on their due date as it was appellant's duty to pay them at that place. No tacit understanding between respondent and Bevis Brothers that the latter would send the money to him before the coupons were forwarded could abrogate or change that duty. Appellant, knowing that the notes were payable at the office of Bevis Brothers in Spokane, and having received the notice from the person in charge of that office, and having paid other coupons for her mother to the same person at the same place in response to similar notice, subsequently receiving the coupon, was reasonably warranted in assuming that Bevis Brothers were authorized to receive the payment. True, as

said in the *Douglass* case: "It is familiar law that one deal-
ing with an agent is bound to know his authority;" but it is
equally familiar law that one dealing with a supposed agent
may safely rely upon the apparent authority which the sup-
posed principal knowingly and continuously permits the sup-
posed agent, whatever his real authority, to assume. There
can be no question that the appellant did in fact believe that
Bevis Brothers were authorized to receive this money. The
whole situation was one reasonably calculated to induce that
belief. *Wolford v. Young*, 105 Iowa 512, 75 N. W. 349;
*Quinn v. Dresbach*, 75 Cal. 159, 16 Pac. 762, 7 Am. St. 138.
Had there been an immediate repudiation of the agency, ap-
pellant would have stood at least some chance of collecting
the money paid from Bevis Brothers before their failure.
There was no such repudiation until August 8, 1911. At
that time there was no such chance. We think the facts
estopped respondent from then denying the agency, which
he did not expressly and unequivocally repudiate before.

Appellant claims that the action was prematurely brought,
in that the coupons were not sent to this state, and in that
respondent declined to accept payment, save on condition
that the 1911 coupon be again paid. This might be true
were it not for the fact that, prior to suit, appellant herself
had given notice in exercise of her own option to accelerate
maturity. Moreover, in connection with that notice, she dis-
claimed any intention of paying any back interest except
that which had accrued since January 1, 1913. After that
notice she could only claim that the action was prematurely
brought by showing that she was then ready and willing to
pay all the matured interest coupons subsequent to that paid
to Bevis Brothers. The parties are now here, the one claim-
ing that the debt has been paid by the several tenders; the
other that neither principal nor interest since 1910 has been
paid. The real contest is as to what, if anything, is due.
The contest having been waged on that issue in the court be-
low, and brought here for our determination, we decline to

treat it as academic and order dismissal of the action as premature.

Finally, it is urged that the conditions of the mortgage were fully satisfied and the lien discharged by the several tenders of interest and of the principal before suit. Appellant also asserts a continued readiness to pay, as excusing the failure to bring the money into court. Undoubtedly at common law, a mortgage being a conveyance with a defeasance, tender of the mortgage debt on law-day satisfies the condition and invokes the defeasance so as to discharge the property from the incumbrance. But the debt remains and its payment may be enforced by an action at law; this on the ground that it is only the incidental or accessorial things that are lost by rejection of tender, not the original debt or duty. *Kortright v. Cady*, 21 N. Y. 343, 78 Am. Dec. 145. Undoubtedly, also, where, as in this state, a mortgage is a mere lien, tender by the mortgagor at any time before suit has the same effect, nor is it necessary in either case that the tender be kept good by bringing the money into court. *Thomas v. Seattle Brewing & Malting Co.*, 48 Wash. 560, 94 Pac. 116, 125 Am. St. 945, 15 L. R. A. (N. S.) 1164. This rule, though logical and well supported by authority, is a harsh one, penal in its nature, and the courts have shown no disposition to extend it. *Murray v. O'Brien*, 56 Wash. 361, 105 Pac. 840, 28 L. R. A. (N. S.) 998. The principle should not be pressed beyond its strict limits. *Harris v. Jex*, 66 Barb. (N. Y.) 232. In order to discharge the lien of the mortgage, the proof must be clear that the refusal was palpably unreasonable, absolute, arbitrary and unaccompanied by any *bona fide* though mistaken claim of right.

"But to produce such serious and heavy consequence the refusal must have been unqualified, and unaccompanied by any *bona fide* claim of right, which was supposed by the party to justify his refusal. The claim of right may have been one that could not be supported as matter of law; still, if it was believed in, and was not wantonly put forward as a cover to

a wrong purpose, it is sufficient to prevent the forfeiture of
the security.  So here, while it is clear enough that the com-
plainant had no right to make it a condition of receiving
payment, that the defendant should enter into stipulations
about making repairs on the mortgaged property, still it
may have been that it thought it had such right; and I do not
find such evidence of its bad faith in this regard as to justify
a declaration of forfeiture." *Union Mutual Life Ins. Co. v.
Union Mills Plaster Co.,* 37 Fed. 286, 3 L. R. A. 90.

In such a case equity will treat a mistake of law as analog-
ous to, if not identical with, a mistake of fact and relieve
against forfeiture. *Renard v. Clink,* 91 Mich. 1, 51 N. W.
692, 30 Am. St. 458.  There is no equity in seeking to avoid
both lien and debt. *Waldron v. Murphy,* 40 Mich. 668;
*Harris v. Jex, supra.*  In the case here, it is manifest that
respondent throughout entertained a *bona fide* belief that he
was entitled to all he demanded.  In holding that he was mis-
taken in this we have gone quite as far as the equities of the
case will justify.  The record discloses a long standing con-
troversy touching a matter upon which there was reasonable
ground for honest difference of opinion, which nothing short
of an appeal to the courts could settle.  It would be harsh
and inequitable to visit upon respondent a forfeiture of his
lien, when, as in this case, a discharge of the lien would be a
discharge of the debt.  We decline to do so.

Though respondent evidently believed that by accepting
payment of subsequent coupons and of the principal he would
prejudice his right to claim that the 1911 coupon had never
been paid, we are satisfied that in this too he was mistaken.
Regardless of the controversy touching that coupon, he was
not justified in refusing to accept payment of the subsequent
coupons and principal.  It has always been held that the
tender of the principal before suit, if wrongfully rejected,
stops subsequent interest.  We must give it that effect in
this case.  Respondent is entitled to his lien for the face of
each of the past due coupons, saving the one paid to Bevis
Brothers, and for the principal debt.  He is not entitled to

interest on any of these coupons, nor upon the principal subsequent to January 1, 1914, nor is he entitled to an attorney's fee, since the foreclosure was the result of his own mistakes.

The cause is remanded with direction to modify the decree in accordance with this opinion. Appellant is entitled to her costs on this appeal.

MORRIS, C. J., MOUNT, CHADWICK, and FULLERTON, JJ., concur.