[No. 18724. Department One. January 9, 1925.]

## GEORGE K. DELANEY *et al., Respondents,* v. C. W. NELSON, *Appellant.*[1]

PRINCIPAL AND AGENT (35)—AUTHORITY—COLLECTION OF DEBTS. A bank was the agent of the owner of a note for the purpose of making collection, where it was his agent in making the loan, he was interested in the bank as a stockholder, and for a period of years had permitted the bank to make collections for him; although it did not have possession of the note.

BILLS AND NOTES (24) — CONSTRUCTION — TIME FOR MATURITY — PRINCIPAL PAYABLE "ON OR BEFORE." A note payable on or before three years after date, the sum of $100 or any multiple thereof of the principal to be accepted on any date on which interest is payable, must be construed as providing that the whole principal sum may be paid at any time.

Appeal from a judgment of the superior court for Franklin county, Truax, J., entered February 19, 1924, upon findings in favor of the plaintiffs, in an action on contract, tried to the court. Affirmed.

*Bausman, Oldham & Eggerman,* for appellant.

*E. M. Gibbons* and *Moulton & Jeffrey,* for respondents.

BRIDGES, J.—By this action the plaintiffs sought to have declared fully paid a note which they had previously given the defendant, and to obtain a release and discharge of the mortgage given to secure it. The defendant denied the payment and, by cross-complaint, sought judgment for the balance due and foreclosure of the mortgage. The trial court granted the relief prayed for in the complaint, and this appeal results.

The plaintiffs are farmers living near Connell, in eastern Washington. The defendant lives in Seattle. He is the general manager of the Tri-State Terminal

[1]Reported in 232 Pac. 292.

Company, which operates a warehouse near Connell. There was, also, in the town of Connell, a bank known as the Farmers State Bank. The Tri-State Company was a stockholder in that institution and did most of its business there. The defendant was also a stockholder in the bank, was its president and a member of the board of directors. His services to the bank were more in the nature of supervision and business advice than looking after the details. While he had considerable correspondence with the bank cashier, he was actually present there but a few days of each year. The plaintiffs were also stockholders in the bank and did their business there, being at times quite heavy borrowers and at times had considerable moneys on deposit. In 1919, all of these parties knew that the bank was in a somewhat precarious financial condition, because of the inability of farmers to promptly meet their loans. It had great trouble in keeping its cash reserve at the required amount. At that time, the respondents were quite heavy borrowers from the bank and it wished the loan reduced. With that in mind, it requested respondents to procure a loan on their farm in order to pay, or at least reduce, their loan to the bank. It assisted them in procuring a loan from the appellant. On February 7, 1919, they executed the promissory note here involved. It reads as follows:

"$6,000.          Connell, Washington, Feb. 7, 1919.

"On or before three years after date, without grace, we promise to pay to the order of C. W. Nelson six thousand ($6000) dollars in gold coin of the United States of America of the present standard value with interest thereon in like gold coin at the rate of nine (9) per cent per annum from date until paid, for value received; interest to be paid annually. . . . The sum of one hundred ($100) dollars or any multiple thereof, of the principal sum of this note, may be paid

at any date on which interest is payable under the terms hereof."

The terms of this note were arranged through the bank and the latter sent to the appellant the abstract to the farm lands. The note and mortgage were drawn in Seattle under appellant's supervision and forwarded to the bank, where they were executed. The bank then sent both instruments to the appellant. At the end of the first year, the respondents, without any notification from the appellant, paid the interest and $3,000 of the principal to the bank, which paid or credited it to the appellant. There were no further transactions concerning this loan for more than a year. The interest on the balance of the note due February 7, 1921, was not paid when due, and the appellant wrote directly to the respondents demanding the interest. Without answering this letter, the respondents paid the interest to the bank and the appellant received the cash therefor.

In September, 1921, the respondents paid to the bank the balance of the principal of the note, together with interest to that date. At the time this payment was made, there was some question between the cashier of the bank and the respondents as to whether the principal could be paid at that time, not being an interest paying date. Mr. Delaney testified that he informed the cashier that, according to the terms of the note, he might pay the principal at any time. According to the testimony of the cashier, at the time this payment was made, it was agreed that the latter would take the matter up with the appellant and see whether the money would be accepted at that time. The respondent denies that there was any arrangement of this character. At any rate, at the time the money was left at the bank, it was charged against the account of the respondents and put to the credit of the appellant, and

the respondents at that time had notice of that transaction.

Within a few days after this transaction, the respondent Delaney went to California for the winter. A few days later, appellant appeared at the bank and was informed by the cashier that the respondents had paid the balance of the principal and interest and inquired whether it would be accepted. The appellant stated that the note had been sold to a bank in Seattle, and that he did not remember its terms sufficiently to be able to say whether the payment could lawfully be made at that time. The cashier asked that, if the money was to be accepted, it would be left with the bank for the time being, but was informed that that could not be done, because it would have to be paid to the bank holding the note. The appellant was not told that the money had been put to his credit in the bank and did not learn of that fact until several months after the bank had closed its doors.

A day or two after this conversation, the cashier re-deposited the money to the credit of the respondents. At the same time, he wrote respondent Delaney a letter informing him what had been done in this respect. This letter was sent to the postoffice address of the respondent in this state. After some delay, it was forwarded to him at California. He did not get it, however, until long after the bank had closed its doors, which was a few days after the transaction last mentioned. At the closing of the bank, the money in question stood to the credit of the respondent. It also appears that the appellant made two or three other loans to persons who did business with the bank, and that they were negotiated through the bank and payments made in substantially the same manner as in this instance. The foregoing are the principal facts; we will not take space to recite the minor ones.

The trial court found most, but not all, of the facts we have recited and that the bank was the agent of the appellant in making the loan, and that it was also his agent for the purpose of receiving payments of interest and principal. The only question involved here is whether the note in question has been paid, that question involving the further question of agency on the part of the bank. We have been greatly assisted by the excellent briefs submitted to us.

We are of the belief that the facts (most of which are undisputed) show that the bank was the agent of the appellant to receive payments from the respondents. It is quite true, as is pointed out by the appellant, that there is no direct testimony whereby the appellant made the bank its agent or authorized it to collect the sums due on this note. But agency does not necessarily depend upon specific appointment. It may be shown by a course of conduct. Here the appellant was a stockholder and officer of the bank and was interested in, and had supervisory control over, its affairs. One of the purposes of the loan was the benefit it would receive in having its cash reserve built up. He accepted the bank's recommendation of the financial standing of the respondents and its representations as to the sufficiency of the security. So far as the record shows, he never saw the respondents until after this suit was instituted. He sent the note and mortgage to the bank when they were executed. It had collected considerable sums of interest and principal and remitted the amounts to him. These collections ran over a period of more than two years. He knew that the note did not provide any place for payment and that, under such circumstances, the respondents had a right to pay at the place of their residence. *Bardsley v. Washington Mill Co.*, 54 Wash. 553, 103 Pac. 822, 132 Am. St. 1133. At no time did he object to the bank's receiving

these payments or give the respondents to understand that they should pay directly to him.

There are many well considered cases which hold that, where one makes a loan through another and, over a considerable period of time, has, without objection, permitted that other to collect interest and principal of the loan, an agency for that purpose is created. It must be admitted that other cases hold to the contrary. But in this case there are many additional elements tending to prove the agency.

Appellant cites many cases which hold, or seem to hold, that one who pays to another who is not in possession of the instrument paid does so at his peril, and that it will be presumed that one is not an agent to collect a note unless he has possession of the instrument with power and authority to surrender it at the time of payment. But we think the better rule is that the fact of possession or non-possession of the note is merely evidence of the authority or lack of authority to collect it, but is not conclusive proof. In this day of complicated commercial affairs, we know that many duly authorized agents have power to collect for others, although they have not possession of the note or instrument upon which the collection is made. The authority to make collection is dependent upon all of the surrounding circumstances and the acts of the parties, and not alone upon the possession by the supposed agent of the note or other instrument upon which payments are being made. *Easton v. Littooy,* 91 Wash. 648, 158 Pac. 531; *Masterson v. Haislett,* 119 Wash. 650, 206 Pac. 359; *Campbell v. Gowans,* 35 Utah 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414 and note.

Appellant also cites cases to the effect that an agent with authority to collect interest does not have power to collect the principal. Abstractly, this is probably a correct statement of the law. But proof of other

circumstances and a course of action may show authority to also collect the principal. In any event, the bank in this case did, several months before the final payment was made, receive $3,000 of the principal and remitted it to the appellant. Under these circumstances, if it was an agent to collect the interest, it was also an agent to collect the principal.

Appellant leans heavily on the case of the *Western Security Co. v. Douglass,* 14 Wash. 215, 44 Pac. 257. But the only facts of that case that are like those here are that the loan was made through the supposed agent, that he had collected and remitted some interest and did not have possession of the note. Other very important differences were that there the note was, by its terms, payable to the payee in Boston; that the payment of the principal involved was made long before it was due or payable, and that the close relationship between the holder of the note and the agent as shown here did not exist there.

We will not further follow the details of appellant's argument on the question of agency. Taking the testimony as a whole, we are convinced that the bank was the authorized agent of the appellant to collect both the interest and the principal of the note in question.

But appellant seriously contends that, if it be conceded that the bank had this authority, it would not have authority to receive the principal at a time when it was not payable, basing this contention on the terms of the note. His position is, as we understand it, that payments on the principal could be made only on interest-paying dates, and since the payment of that portion of the principal here involved was made on another date, there was no authority, without the express consent of the appellant, to accept the money; and any acceptance would be beyond the power of the agent and not binding on the appellant. If appellant's con-

struction of the note is correct, we are disposed to believe his contention should be sustained. It will be remembered that the note was dated February 7, 1919, and says:

"On or before three years after date we promise to pay . . . Interest to be paid annually . . . The sum of one hundred ($100) dollars or any multiple thereof of the principal sum of this note may be paid at any date on which interest is payable under the terms hereof."

It is elementary law that all provisions of a contract must, if possible, be given force. In our opinion, this note means that the maker may pay all of the principal at any time before its due date, but if he wishes to pay only a part thereof before that date, he may do so, provided he pays $100 or a multiple thereof on an interest-paying date. In other words, the maker may pay all of the note at any time, but could pay a part of it only on interest-paying dates. This construction gives effect to all of the provisions of the note. The bank being the agent of the appellant, and the respondents being authorized to pay the balance of the note at the time they did, the money, when received by the bank became that of the appellant, and neither he nor the bank had authority thereafter, without the respondent's consent, to deposit the money to the credit of the latter, thereby attempting to annul the very purpose for which the payment was made.

The case of *Masterson v. Haislett, supra,* is very much in point. The court said:

"The question to be determined is whether Rhodes was the agent of the appellant or not. The evidence by appellant himself shows that Rhodes was handling money generally for appellant to be loaned upon real estate security, and that Rhodes systematically collected the moneys coming due upon the loans and in general settled with appellant. Appellant testified that

Rhodes adopted a system of rendering monthly statements to appellant by mail or by hand. Appellant and respondents had never met until the day of the trial. Appellant gave respondent no notice that Rhodes was not authorized to collect moneys falling due upon the loan, for appellant, and to pay such moneys directly to appellant. For four years interest payments were made through Rhodes and paid by him to appellant. A part of the principal payment which was made by respondents to Rhodes in 1919 was paid over to appellant. The remainder was appropriated by Rhodes. . . . Under such a state of affairs the fault, if any, was with appellant, who put it in the power of Rhodes to defraud respondents, and not the fault of respondents. Rhodes was the agent of appellant, and not of respondents. At least he apparently possessed the status and authority of an agent to do the things he did."

We think the judgment was right. It is affirmed.

MAIN, C. J., PEMBERTON, MITCHELL, and TOLMAN, JJ., concur.