[No. 31522.    Department One.    March 9, 1951.]

J. E. BLUME, *Respondent*, v. EVA BURNS BOHANNA *et al.,*
*Appellants.*[1]

[1]Reported in 228 P. (2d) 146.

*Karr, Tuttle & Campbell,* for appellants.

*Kumm, Hatch & Cook,* for respondent.

DONWORTH, J.—Plaintiff brought this action to compel specific performance of the renewal-option provision of a lease. The facts material to the controversy were stated in a stipulation entered into by the parties which was admitted in evidence at the trial. After considering this stipulation and the arguments presented on behalf of the plaintiff and defendants, the trial court took the case under advisement and subsequently entered a decree of specific performance directing the defendant Bohanna to execute a certain lease and deliver it to the plaintiff. From this decree the defendants have appealed.

Eva Burns Bohanna will be referred to herein as though she were the sole appellant.

The facts as stated in the stipulation (which the trial court found to be true) are substantially as follows:

Appellant, a resident of San Francisco, is, and at all times material to this case has been, the owner of certain real property situated at 4130 Roosevelt way, Seattle. She entered into a lease of this property with the respondent on January 2, 1947, for a term of three years, commencing February 1, 1947, and terminating January 31, 1950, at a rental of one hundred dollars per month. The particular provision of this lease, which is the subject of this action, reads:

"The Lessee may, at its option, obtain a renewal of this lease for a further term of equal duration and upon like terms and conditions by giving to the Lessor notice of intention to renew not less than sixty (60) days prior to the expiration of the terms herein specified, subject to the consent of the Lessor."

Pursuant to this provision, respondent on October 25, 1949, gave appellant written notice by registered mail of

his intention to renew the lease. This notice was received by appellant two days later. By letter to respondent dated December 7, 1949, appellant refused to renew the lease and demanded that respondent vacate the property and deliver possession thereof to her at the expiration of the term (January 31, 1950).

More than a year previous to receipt of respondent's notice, appellant, on September 8, 1948, had entered into another lease of the same property in which University Agency, Inc., was named as lessee. This lease provided for a ten-year term commencing February 1, 1950, at a rental of $165 per month. For this reason appellant refused to renew the lease with respondent.

Respondent has been in possession of this property under prior leases since October 1, 1937. The lease between the parties immediately preceding the one here involved was for a term of three years commencing February 1, 1944, and expiring January 31, 1947. It provided for a rental of sixty dollars per month and contained a renewal-option provision identical in language with that quoted above from the lease in controversy. Timely notice was given by respondent of his intention to renew that lease at a rental of sixty dollars per month. Appellant refused to renew the lease because she felt the rent was not sufficient. Thereupon, respondent offered to increase the rent to seventy-five dollars per month and had a lease prepared which was identical in language with the then expiring lease except as to the amount of rental. Appellant still felt that the proposed rental was insufficient, but was willing to renew the lease at a rental of one hundred dollars per month. Respondent agreed to pay this amount of rent and thereupon the lease, which is the subject of this controversy, was executed by the parties.

The trial court in its decree concluded that, since appellant desired to re-rent the property (as indicated by her attempt to lease to University Agency, Inc.), respondent had a right to renew the lease upon the same terms and conditions as those contained in the existing lease, except that no option for further renewal would be included.

The proper construction to be placed upon the renewal-option provision of the existing lease (previously set out in this opinion) is the only issue before this court.

Appellant's position is that respondent did not have an absolute right of renewal but had only a right to renew subject to the contingency that appellant might not agree to the renewal terms if they were not acceptable to her at the time the renewal was sought. She interprets the words "subject to the consent of the lessor" as giving her the right to refuse to renew the lease if the terms are not acceptable at the time of the renewal.

Respondent, however, contends that the language in the renewal provision means that appellant is obligated to renew the lease on the same terms and conditions if she concludes to re-rent the property. Respondent concedes that appellant is not bound to renew the lease if she desires to use the premises personally, sell the property, remove the existing improvements therefrom, build a new building, or make other use of the property inconsistent with re-renting.

■ Ordinarily, the agreement of the parties is to be ascertained from the plain language used in their written instrument, and where the meaning of a contract is plain, another meaning cannot be added by implication. *Puget Sound International Railway v. Everett,* 103 Wash. 495, 175 Pac. 40. But if the instrument does not lend itself to that degree of certainty and falls within the realm of ambiguity, resort may be had to several general rules of construction which are helpful in arriving at a conclusion.

■ It cannot be denied that the language used in the renewal-option provision is ambiguous because, if the last clause ("subject to the consent of the lessor") is taken literally, the option provision would be rendered nugatory. We must assume that the parties had some practical purpose in mind when they inserted this option provision in the lease, especially since they used the same language in two leases (the 1944 lease and the 1947 lease involved here).

As was said by this court in *Anderson v. Frye & Bruhn,* 69 Wash. 89, 124 Pac. 499, concerning a renewal clause in a lease ("with the privilege of two years renewal at a rental satisfactory to both lessor and lessee") where the lessor claimed the absolute right to decide that any amount of rent would be unsatisfactory to him:

"Of course, if he would have such right, that part of the agreement would not obligate him to do anything, and for that reason probably could be ignored and thus leave nothing in the contract except the one year's lease. *It is manifest that this language was put into the contract with a view to giving appellant some rights looking to a renewal which it would not otherwise have.* This of course is inconsistent with the notion that respondent can, by any arbitrary action on his part, nullify this portion of the contract." (Italics ours.)

Several rules of construction aid us in determining the meaning of this option provision:

■ (1) An interpretation which renders a lease provision valid and performance under it possible will be preferred to one which makes it void or performance impossible or meaningless. *Dew v. Pearson,* 73 Wash. 602, 132 Pac. 412; *Delaney v. Nelson,* 132 Wash. 472, 232 Pac. 292; 3 Williston on Contracts (Rev. ed.) 1785, § 620; 17 C. J. S. 726, Contracts, § 309.

■ (2) It is a familiar rule, that if the provisions of a lease be doubtful, in that they are reasonably capable of more than one interpretation, the court will adopt that interpretation which is the more, or most, favorable to the lessee. *Murray v. Odman,* 1 Wn. (2d) 481, 96 P. (2d) 489; *National Bank of Commerce of Seattle v. Dunn,* 194 Wash. 472, 78 P. (2d) 535.

■ (3) Another well established rule of construction is that, if the meaning of a lease provision is doubtful, the practical construction put upon it by the parties themselves will be accorded great weight by the courts. *Provident Trust Co. v. Spokane,* 63 Wash. 92, 114 Pac. 1030; 32 Am. Jur. 131, Landlord and Tenant, § 127; 51 C. J. S. 858, Landlord and Tenant, § 232.

The evidence shows that in 1947, when the prior lease was about to expire, the parties in dealing with the identical renewal provision entered into negotiations regarding the amount of rental to be paid under the new lease. Respondent did not make an effort to legally enforce his position that he was entitled to a new lease at a rental of sixty dollars per month (the rental called for by the expiring lease). He first offered to pay seventy-five dollars per month and, when appellant declined to accept this sum, the parties agreed upon a rental of one hundred dollars per month.

It seems evident in view of these actions that the parties construed the renewal provision in the lease as giving the lessee the first opportunity to negotiate with the lessor with respect to a rental amount in a new lease. In the event that a mutually satisfactory rental should be agreed upon, the lessor would be compelled to give a new lease for a period of three years. This construction of the renewal provision by the parties seems the most reasonable and is one which gives it some effect rather than rendering it meaningless. We are constrained to adopt this interpretation.

Neither of the parties has cited any decisions of this court involving language identical, or even similar, to that contained in the present lease, nor have we been able to find any such decision.

The case of *Diettrich v. J. J. Newberry Co.*, 172 Wash. 18, 19 P. (2d) 115, involved a lease provision giving the lessee "the preferential right to lease the said premises at a rental acceptable to the lessors" for five years more. After referring to our prior decisions relating to lease options, we held this provision enforcible saying:

"When the option reserved in the lease was to renew it before the end of the term for an additional term of five years at a rental to be agreed upon, we consider that option must be reasonably and not arbitrarily exercised by both parties. In other words, the lease being construed in favor of the lessee where possible, the rental acceptable to the lessors when the option was exercised by the lessees must be a reasonable rental.

"In consonance with the rule of our cases, we conclude that the option clause is enforceable, and that appellant may not arbitrarily fix any other rental charge than a reasonable one, and where that cannot be agreed upon, the lessee may have that amount determined by the courts."

Appellant cites *Pulsifer v. Walker*, 85 N.H. 434, 159 Atl. 426, 81 A.L.R., 1052 (distinguished by this court in the *Diettrich* case) as supporting his position. The lease under consideration in that case gave the lessees an option of renewal, "providing said lease has been satisfactory to the said lessors." The court held that the quoted proviso was valid and gave the lessors the legal right to determine at the end of the term whether the lease had been satisfactory to them. The court accordingly held an increase in taxes and an offer by others to take a lease on terms more advantageous to the lessors, and at a higher rental, were legitimate reasons for dissatisfaction with the existing lease and a refusal to renew it. We think that this cited case is not in point since the lease language differs materially from that used in the instant case and there was no evidence that the parties had by their conduct construed the language there involved.

Appellant also contends that the trial court erred in construing her execution of a ten-year lease with University Agency, Inc., in 1948 at a rental of $165 a month as proof of her desire to rent the property at the termination of respondent's lease. With this contention we cannot agree, for it seems reasonable for the trial court to conclude from that fact that appellant was desirous of re-renting her property rather than using it in some manner inconsistent with re-renting. No other inference can be drawn from her executing that lease nearly seventeen months before the existing lease with respondent was to expire.

Holding, as we do, that the construction which the parties themselves placed upon the renewal-option provision was that the lessee, upon giving the written notice, was granted a preferential right to lease the premises for an additional three-year term at a rental to be mutually agreed upon by the parties, appellant's attempt to thwart

respondent's rights in the premises by entering into a lease with University Agency, Inc., thirteen months before respondent was required to give notice of intention to renew his lease constituted a clear breach of her contract with respondent.

Until December 1, 1949 (60 days prior to the expiration of the term), respondent did not have to elect whether he wished to renew or not. Appellant ignored respondent's rights entirely when she executed the lease with University Agency, Inc., and arbitrarily followed her own interpretation of the option-renewal provision, to-wit, that the words "subject to the consent of lessor" meant that respondent had no option to renew unless she chose to recognize such right. Such action on her part was arbitrary and unreasonable. If appellant desired to obtain a judicial interpretation of the renewal-option provision before executing the University Agency, Inc., lease, she could have sought a declaratory judgment as provided in Rem. Rev. Stat. (Sup.) § 784-1 [P.P.C. § 65-1], *et seq.*

The decree of the trial court is modified and the cause remanded to the superior court with directions to modify its decree to provide that appellant and respondent shall negotiate in good faith in an endeavor to agree on a reasonable rental during the period of the lease. If the parties shall not have so agreed within sixty days from the filing of the remittitur, the trial court shall hear evidence as to the reasonable rental value of the leased premises as of January 31, 1950, and determine the proper sum to be inserted in the new lease as rental for the term thereof.

As so modified, the decree is affirmed. Respondent shall recover costs in this court against both appellants.

BEALS, MALLERY, and HAMLEY, JJ., concur.