574 A.2d 314

ABC APPLIANCE SALES AND SERVICE, INC.

v.

Bradford D. COLE, Jr.

No. 1470, Sept. Term, 1989.

Court of Special Appeals of Maryland.

June 4, 1990.

Shale D. Stiller (Avery Aisenstark, Frank, Bernstein, Conaway & Goldman, Baltimore, Michael R. Roblyer, Jerome B. Richman and Roblyer & Richman, P.A., Annapolis, on the brief), for appellant.

Arthur G. Kahn (Deckelbaum, Ogens & Fischer, Chtd., on the brief), Bethesda, for appellee.

Argued before WILNER, BISHOP and FISCHER, JJ.

BISHOP, Judge.

ABC Appliance Sales and Service, Inc., appellant, appeals the Order of the Circuit Court for Anne Arundel County (Lerner, J.) granting the Motion for Summary Judgment of Bethesda Land Partnership (Bethesda)[1] and declaring that Bethesda had the right to terminate a lease.

## ISSUES

Appellant presents the following issues:

I. Whether Bethesda was entitled to summary judgment endorsing its early termination of the lease with appellant even though (a) Bethesda's construction of the disputed termination clause is repugnant to and effectively negates two renewal options unqualifiedly granted by the lease to appellant, (b) the termination clause is subject to another, more plausible construction, and (c) uncontroverted evidence in the record shows that the original parties to the lease never intended the termination clause to permit termination before appellant could exercise those options;

II. Whether it is proper to construe and apply the disputed termination clause so as to negate the right of appellant to exercise renewal options expressly and unqualifiedly granted elsewhere in the lease;[2] and

III. Even assuming, arguendo, that the termination clause in the Original Agreement qualified the renewal options granted in that same Original Agreement, whether the termination clause—given both (a) its limited reference to the terms "before mentioned" and (b) the landlord's agreement to waive any right of termination—can properly

---

1. Bradford D. Cole, Jr., appellee, is General Partner of Bethesda Land Partnership.

2. Issue II is essentially a continuation of Issue I and will be treated as such in the Discussion, *infra.*

be construed to qualify the substituted terms and new renewal options contained in a subsequent Addendum.

## FACTS

The lease consists of two documents: The first is a 1977 "Landlord and Tenant's Agreement", between C. Leroy Dixon, Landlord, and Earle T. Farr and Joyce F. Lowman, ABC Appliance Sales and Service, Tenant (hereinafter the Original Agreement). The second is a 1983 "Addendum to Landlord and Tenant's Agreement", between the same parties (hereinafter the Addendum). Both the Original Agreement and the Addendum were drafted and prepared by the then landlord, C. Leroy Dixon (Dixon).

The Original Agreement provided for the lease to Farr and Lowman of retail space in Dixon's shopping center, located on Mayo Road, Route 253, Edgewater, Anne Arundel County, Maryland. Paragraph 1 of the Original Agreement, under the subheading "TERM", provided:

The term of this lease shall begin on February 1, 1977 and shall be for a period of thirty six months (36) at a monthly rental of Four Hundred Fifty Dollars ($450.00) payable in advance on the first day of the month, and on the first day of each month thereafter during the term of this lease, to be paid to C. Leroy Dixon, Edgewater, Maryland. It is further agreed that Tenant shall have the option of leasing for an additional thirty six (36) months at a monthly rental for Five Hundred Forty Dollars ($540.00). It is further agreed that Tenants shall have the option of leasing for a third additional thirty six months (36) at a monthly rental of Six Hundred Fifty Dollars ($650.00).

The last thirty-six (36) month renewal term under the Original Agreement began February 1, 1983 and terminated January 31, 1986. After the last thirty-six (36) month renewal option had been exercised by the tenant, the same parties entered into the Addendum, providing for the tenant's lease of additional, adjacent space in the shopping

center, at an increased rental price, and for the substitution of a new principal term. Specifically, the third paragraph of the Addendum provided:

BEGINNING October 1, 1983, and shall continue for a period of five (5) years at a monthly rental of One Thousand Five Hundred Fifty Dollars ($1,550.00) for # 4 and # 6, Mayo Road, Edgewater, payable in advance on the first day of the month, and on the first day of each month thereafter during the term of this lease, to be paid to C. Leroy Dixon, Edgewater, Maryland. It is further agreed that Tenant shall have the option of leasing for an additional five (5) years at a monthly rental of One Thousand Nine Hundred Thirty Seven Dollars ($1,937.00). It is further agreed that Tenants shall have the option of leasing for a third additional five (5) years at a monthly rental of Two Thousand Four Hundred Thirty Two Dollars ($2,432.00).

On December 19, 1986 Dixon conveyed the Mayo Road shopping center (including the leased premises) to Bethesda, subject to the Original Agreement and the Addendum. On March 2, 1988 Farr and Lowman executed a written assignment of the Original Agreement and Addendum to appellant.[3]

On June 17, 1988 Bethesda gave appellant written notice of its intent, "in accordance with Paragraph 5 of that certain Landlord Tenant's Agreement made January 21, 1977," to terminate the lease as of September 30, 1988, the last day of the primary 5–year term provided for in the Addendum. Paragraph 5 of the Original Agreement provided:

This agreement with all its provisions and covenants shall continue to be in force from month to month, after the expiration of the terms heretofore mentioned, *provided,*

---

**3.** Appellant had been incorporated by Farr and Lowman in August 1977. Dixon was informed of the tenant's incorporation and, with Dixon's approval, all subsequent lease payments were made by checks from the new corporate entity.

*however, that the parties hereto, or either of them, can terminate the same at the end of the term before mentioned, or any renewal thereof, by giving at least sixty (60) days previous notice in writing.*

(Emphasis added.)

On September 19, 1988 appellant filed its complaint in the Circuit Court for Anne Arundel County seeking a declaratory judgment that Bethesda had no right to terminate the lease. Appellant contended that the proviso at the end of Paragraph 5 of the Original Agreement was never intended or understood by the parties to give the landlord any right to terminate the lease prematurely, even before the tenant had an opportunity to exercise the renewal options expressly granted to the tenant in the Original Agreement and Addendum, but instead applied only to the commencement and possible termination of the month-to-month holdover tenancy for which there was provision earlier in the same sentence.

Bethesda filed an answer to the complaint and then a Motion for Summary Judgment contending that the termination clause was unambiguous and that because there was no dispute as to any material facts, judgment should be entered in its favor as a matter of law.

In its response in opposition to Bethesda's Motion for Summary Judgment, appellant submitted two Affidavits from Lowman and Dixon, the individuals who had negotiated the Original Agreement and the Addendum. In the Affidavits they both stated that the Original Agreement and the Addendum were drafted and prepared by the then landlord, Dixon and that:

It was never the intention of either the Landlord or the Tenant that the terms of the January 21st lease [i.e., the Original Agreement] would allow the Landlord the right to terminate the lease before the Tenant had the right to exercise any option to extend the terms of the lease.

Both affiants also state that, before the Addendum was executed, the tenant and landlord agreed that, to the extent

Paragraph 5 might be misread to allow a right of termination before the end of all available option periods, the landlord specifically renounced and waived that "right". This agreement was not reduced to writing.

After a hearing on the motion Judge Lerner found that "there is no ambiguity in the lease, ... the addendum to the lease is clear, and ... additional evidence or testimony would not be admissible to explain any terms of the lease" and granted the summary judgment. The court issued a declaration that Bethesda "had the right to terminate the lease" and that appellant "unlawfully held over beyond said termination."

## DISCUSSION

Appellant argues that the termination clause in paragraph 5 of the Original Agreement is limited to the matters dealt with in the same sentence, i.e., only the month-to-month holdover tenancy. Appellant contends that the construction asserted by Bethesda, and applied by the trial court, renders the renewal options nugatory thereby creating an ambiguity. Appellant contends that the existence of an ambiguity provides it with the opportunity to submit evidence of the original lessor's and lessee's intentions. This other evidence, appellant argues, produces a dispute as to material fact rendering summary judgment inappropriate. Finally, appellant posits, even if the termination clause in the Original Agreement qualifies the renewal options therein, it cannot properly be construed to qualify the terms contained in the subsequent addendum.

Bethesda responds that when read together as one document, the Original Agreement and the Addendum unambiguously limit appellant's option to renew the lease by the landlord's right to terminate it on sixty-days written notice. Further, Bethesda argues that the alleged oral agreement between the parties to the Original Agreement and Addendum, into which they purportedly entered at the time of the execution of the Addendum, whereby the landlord relinquished his right to terminate the lease on sixty-days writ-

ten notice, varied the terms of the written lease and thus was barred by the parol evidence rule. Finally, Bethesda contends that even if the terms of the lease were ambiguous, there is no genuine dispute that the lessor and lessee construed the Original Agreement to limit the lessee's option by the lessor's right to terminate the lease.

This case comes to us as a challenge to the issuance of a summary judgment. Maryland Rule 2–501(e) provides, in relevant part:

Rule 2–501. MOTION FOR SUMMARY JUDGMENT

\* \* \* \* \* \*

(e) Entry of Judgment.—The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

We have held that:

... [T]he summary judgment procedure is not a substitute for trial but a hearing to determine whether a trial is necessary, when there is no genuine controversy. *Brewer v. Mele*, 267 Md. 437, 298 A.2d 156 (1972). The critical question for the trial court on the motion for summary judgment is whether there exists a genuine dispute as to a material fact and, if not, what the ruling of law should be upon those undisputed facts. In determining whether a factual dispute exists, all inferences which may be drawn from the pleadings, from affidavits, or from admissions must be resolved against the moving party. Indeed, if the facts are susceptible of more than one inference, the materiality of that arguable factual dispute must be judged by looking at the inferences in a light most favorable to the person against whom the motion is made and in a light least favorable to the movant. *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 495 A.2d 838 (1985).

*Brown v. Dart Drug Corp.*, 77 Md.App. 487, 493, 551 A.2d 132 (1989). Therefore, we will examine the evidence in the light most favorable to appellant and determine whether there exists a genuine dispute as to material facts.

The case *sub judice* turns on the question of whether an ambiguity exists either within the Original Agreement or between the Original Agreement and the Addendum. If there is no ambiguity then there is no genuine dispute as to any material fact and Bethesda is entitled to judgment as a matter of law. If there is a genuine dispute then summary judgment is inappropriate.

Our review of the Original Agreement reveals that the paragraph entitled "TERM" unambiguously provides for a thirty-six (36) month rental period with the option to continue the lease for two additional thirty-six (36) month periods at an increased rent. In addition, we hold that the Addendum unambiguously provides for an additional five (5) year rental period, to commence upon termination of the last thirty-six (36) month renewal period provided in the Original Agreement. The Addendum further provides the option to renew the original five (5) year rental period for two additional five (5) year periods at an increased rent.

Paragraph 5 of the Original Agreement is also unambiguous. The natural and plain reading of the termination clause indicates that either party may terminate the lease on sixty-days written notice at the end of the initial rental period or any renewals thereof. This paragraph is made applicable to the additional rental periods specified in the Addendum by the following clause in the Addendum: "All other terms and conditions of the Landlord and Tenant's Agreement dated January 21, 1977, between the parties hereto shall remain the same and apply to both premises."

Each of the terms and conditions provided in the Original Agreement are clear and unambiguous. Application of paragraph 5, however, conditions and limits the tenant's renewal options upon the landlord's consent. An option limited by the landlord's consent is no option at all:

An 'option' in the lessee to renew such terms as may be satisfactory to both parties is obviously nugatory, ... giving [the lessee] merely the right to enter into a new contract with the owner of the reversion, which right he would have had without any such provision.

2 Tiffany, *The Law of Landlord and Tenant* 1521 (1910). Herein lies the ambiguity; the two provisions are in conflict.

In *Canaras v. Lift Truck Services*, 272 Md. 337, 350, 322 A.2d 866 (1974) the Court held:

Where ... "doubt arises as to the true sense and meaning of the words themselves or *difficulty as to their application under the surrounding circumstances,* the sense and meaning of the language may be investigated and determined by evidence *dehors* the instrument." *Pumphrey v. Kehoe, supra,* [261 Md. 496] at 504, 276 A.2d [194] at 199 [ (1971) ] (emphasis suppled). *See also Foreman v. Melrod, supra* [257 Md. 435, 263 A.2d 559 (1970) ]; *Davidson v. Katz, supra* [254 Md. 69, 255 A.2d 49 (1969) ]; *Allen v. Steinberg, supra* [244 Md. 119, 223 A.2d 240 (1966) ].

"[I]t is equally well settled that where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts collateral to the instrument, may be admitted," *Chesapeake Brewing Co. v. Goldberg,* 107 Md. 485, 488, 69 A. 37, 39 (1908), and "if any doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning," *Sommers v. Dukes,* 208 Md. 386, 394, 118 A.2d 660, 664 (1955), both cited with approval in *Davidson v. Katz, supra,* and *Schuman v. Gordon Inv. Corp.,* 247 Md. 265, 232 A.2d 256 (1967).

We hold that paragraph 5 of the Original Agreement when considered in conjunction with the terms of the Addendum creates an uncertainty that requires additional evidence necessary to aid the court in comprehending the parties' intentions. The court erred by finding that "additional

evidence or testimony would not be admissible to explain any terms of the lease."

In support of its position that the parties never intended to limit the renewal options in the Original Agreement, the appellant submitted the affidavits of the original lessor and lessee to which we referred *supra*. The affidavits indicate that at the time the Addendum was executed, the parties expressly agreed that the options shall not be limited by any terms of the Original Agreement. Appellant cites a string of cases in which the Court of Appeals has construed leases and resolved inconsistencies so as to protect and preserve the tenant's right to exercise renewal or purchase options granted in a lease. *See, e.g., Stedman v. Hill*, 195 Md. 568, 587, 74 A.2d 41 (1950) (where second lease was a modification of first lease, the fact that second lease did not specifically mention option contained in first lease did not vitiate that option); *Hyatt v. Romero*, 190 Md. 500, 505, 58 A.2d 899 (1948) (construing lease so as to preserve renewal option and prevent "parties attempting to avail themselves of the rigid rules of law for unfair purposes"); *Thomas v. G.B.S. Brewing Co.*, 102 Md. 417, 421–22, 62 A. 633 (1905) (construing ambiguity in lease so as to preserve purchase option during renewal terms). *See also Duncan v. G.E.W., Inc.*, 526 A.2d 1358, 1365 (D.C.App.1987) (where tenant was late in exercising renewal option due to honest mistake in calculation, court applied Maryland law and concluded that "[i]n these circumstances we are convinced that forfeiture of the lease renewal options would be unconscionable").

Maryland appellate courts have yet to rule on this precise issue. There are, however, at least three jurisdictions that have been confronted with a lease that granted an option but then limited it by the landlord's consent. In *Glenn v. Bacon*, 86 Cal.App. 58, 260 P. 559 (1927) the court was asked to construe a lease that purported to create, in one clause, a term of one year with a four year option, and in a later clause provided for a term that would run "at the option of the parties hereto for five years." Despite the landlord's contention that the clear language of the later

clause only permitted a renewal of the lease upon mutual agreement, the court ruled that the later clause could not be applied so as to nullify the option granted to the tenant in the earlier clause.

In *Smith v. Russ,* 184 Kan. 773, 339 P.2d 286 (1959) the Court construed a lease that provided for a primary term of three years; however, there was a clause which precluded "any renewal or extension of [the lease] without the written consent of the [landlord]." A subsequent clause gave the tenant "the option of extending the lease for an additional five (5) years." Holding for the tenant, the Court held that the two clauses were "repugnant" and irreconcilable and then explained:

> An option is a choice or the right to choose. In the law of contracts by the use of the term 'option' is normally meant a *legally binding option.* The option is binding upon the party who gives it where the mutual assent is clear and there is legally sufficient consideration for the agreement. As applied to the farm lease in question provision [2] is a separate and distinct agreement for extension of the lease. It is a binding option contract. *To say that written consent of the appellees was required for the tenant to exercise this option would be equivalent to excision of the option provisions from the lease.*

*Smith, supra,* 339 P.2d at 290 (Additional emphasis supplied.)

In *Blume v. Bohanna,* 38 Wash.2d 199, 228 P.2d 146 (1951) the disputed lease clause provided "[t]he Lessee may, at its option, obtain a renewal of this lease ... subject to the consent of the Lessor." The court held that the lessee was entitled to renew the lease, notwithstanding the lessor's refusal to consent, explaining:

> It cannot be denied that the language used in the renewal-option provision is ambiguous because, if the last clause "subject to the consent of the lessor" is taken literally, the option provision would be rendered nugatory. We must assume that the parties had some practical

purpose in mind when they inserted this option provision in the lease....

*Blume, supra,* 228 P.2d at 149.

Appellee, on the other hand, contends that based on the appellant's affidavits, the original parties construed the Original Agreement to limit the tenant's renewal option by the landlord's right to terminate it on sixty-days written notice, otherwise the alleged oral agreement would not have been necessary.

We find *Glenn, Smith* and *Blume* persuasive. There is an ambiguity in the lease which may be explained by extraneous evidence. Appellant presents affidavits from both parties to the Original Agreement and Addendum. The affidavits clearly indicate the intent of the parties upon drafting and executing the lease. The trial court committed error by refusing to consider this evidence and granting appellee's Motion for Summary Judgment. It is therefore necessary that the case be remanded so that the trial judge may consider the parol evidence.

## CONCLUSION

We hold that the termination clause found in paragraph 5 of the Original Agreement is irreconcilable with the renewal options granted to appellant in the same lease and in the Addendum. The trial court should have considered all admissible extraneous evidence of the parties' intention upon entering into the Original Agreement and Addendum. The granting of summary judgment for appellee was erroneous.

JUDGMENT REVERSED AND REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION; COSTS TO BE PAID BY APPELLEE.

WILNER, J., concurs.

WILNER, Judge, concurring.

I agree that judgment was improperly entered in favor of appellee and that it should be reversed. Unlike the panel majority, however, I find nothing ambiguous about the lease and addendum—they are not well drawn, to be sure, but they are not ambiguous in terms of the issue before us. To me, the provision in ¶ 5 allowing either party, on 60 days advance notice, to terminate the lease, refers clearly and exclusively to the holdover provision contained in the same sentence to which it is a proviso. Its purpose is clear from the document; it was intended to allow the parties to preclude the commencement of an automatic month-to-month tenancy following the end of the original term (if the renewal option was not exercised) or following the end of a renewal term. Read that way, the lease terms are consistent, reasonable, and in full accord with the normal rules of construction cited by the majority. Read in the manner urged by appellee, the lease would become inconsistent and ¶ 5 could lead to an absurd and obviously unintended result.

Accordingly, I would direct the lower court to enter a declaratory judgment that ¶ 5 does not allow the landlord to prevent the tenant from timely and properly exercising its option to renew. I see no need for evidence to be taken. The lease itself is clear. Even if that were not so—even if the lease were ambiguous and the court had to search for the true intent of the contracting parties—the uncontradicted affidavits submitted by appellant reveal and lead to the inescapable conclusion that the parties did not intend for the proviso of ¶ 5 to permit the landlord to abrogate the tenant's option to renew.