# JANUARY TERM, 1899.

SMITH *v.* SPRAGUE.

ESTOPPEL—PAROL LEASE—SURRENDER—GROWING CROPS.

The lessee under a parol lease for one year, with privilege of harvesting his wheat the next, moved away when the lease expired, and later returned, and cut and stacked the wheat, unmolested by the landlord, who erroneously supposed he had only a lien on the wheat for his rent, and afterwards attached it as the property of the lessee. Being advised that the title was in him, the landlord dismissed the attachment, and converted the wheat to his own use. *Held,* that the landlord, having acted in good faith, and in ignorance of his legal rights, in levying upon the wheat, should not be held estopped to assert his title; the lessee having had equal knowledge of all the facts.

Error to Oakland; Smith, J. Submitted June 17, 1898. Decided January 3, 1899.

Trover by William T. Smith against Caleb J. Sprague. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

*C. C. Yerkes,* for appellant.

*A. & S. H. Perry,* for appellee.

LONG, J. This is a suit in trover for the conversion of a quantity of wheat. Plaintiff's contention is that in the winter of 1894–95 defendant, Sprague, orally leased his farm for one year to one Orrin Cook, for money rent. The lease commenced with Cook's occupancy, about March 1, 1895. At that time there was growing on the farm a field of wheat of about 18 acres, and in the lease it was agreed that Cook should have the privilege of sowing an

equal acreage that year, and of harvesting it the next. At the expiration of the first year, the parties settled satisfactorily; and it was then verbally agreed that Cook should have the place for another year at substantially the same terms as the first year. The arrangement for the second year was made in February, 1896, and Cook occupied the farm up to about March 1, 1897, when he moved away. On July 15, 1897, he went back to the farm, and cut and stacked the wheat now in question, and which was produced from the wheat he had sown in the fall of 1896. On September 3, 1897, he executed a bill of sale of the wheat to the plaintiff, the consideration of the sale being $225, which Cook owed plaintiff for work done on the farm. September 21, 1897, defendant went before a justice, and swore out a writ of attachment against Cook, and directed a constable to levy it on the stacks of wheat. Before this attachment suit became returnable, defendant caused the same to be discontinued, and then threshed the wheat, sold it, and kept the proceeds; and on the trial it was conceded that defendant converted it to his own use. The court instructed the jury to find for the defendant.

This lease was not in writing, and, under the holding of this court in *Carney* v. *Mosher*, 97 Mich. 554, it expired one year from the date it was made; that is, one year from February, 1896. In March, 1897, Mr. Cook moved off the farm, and presumably surrendered it to the defendant. He then sold the wheat to plaintiff, and, under an arrangement with plaintiff, went to the farm in July following, cut the wheat, and stacked it. Under the rule in *Carney* v. *Mosher, supra*, Mr. Cook, the lessee, would have had no right to the wheat after the surrender of the premises, and could not have maintained an action therefor. The plaintiff had no greater right.

But the plaintiff maintains that the defendant is now estopped from setting up title to the wheat, because he stood by and saw Mr. Cook cut and stack it, and thereafter commenced proceedings by attachment against Cook,

levying upon the wheat as his (Cook's) property. It is apparent that both defendant and Cook were mistaken as to their legal rights. Cook undoubtedly supposed when he left the farm that he would have the right to return and cut and harvest the crop, as it was agreed he might. He owed defendant for a year's rent, and defendant claimed a lien on the wheat for the rent, and most likely understood that that was the extent of his right in the crop. Under the rule in *Carney* v. *Mosher*, the defendant was the legal owner of the crop. When Cook undertook to cut it, defendant claimed that he must be paid his rent out of it. He was then trying to save his rights as he then understood them, and, in making the levy of the attachment, he was undertaking to enforce that right. Subsequently, he was advised as to his legal rights, advised that he had the title, and then sought to enforce those rights by retention of the crop. Defendant apparently acted in good faith, and without knowledge of his legal rights, when making the levy of attachment. We think it is not a case for the application of the doctrine of equitable estoppel. To constitute an estoppel of this character, such as will prevent a party from asserting his legal rights to property, there must be some degree of turpitude in the conduct of the party to the estoppel, which has misled others to their injury. Conduct or declarations founded upon ignorance of one's rights have no such ingredient, and seldom work any such result. *Henshaw* v. *Bissell*, 18 Wall. 255. No deception was practiced upon Cook. He knew the facts as fully as the defendant did. The plaintiff is in no better position than Cook would be had he brought the action. The property was on the defendant's farm at the time plaintiff took his bill of sale, and he knew all the facts which defendant knew. He also took the wheat on a past-due indebtedness from Cook to him, and was not, therefore, a *bona fide* purchaser. Upon the whole record, the court was not in error in directing the verdict for defendant.

The judgment must be affirmed.

The other Justices concurred.