No. 36,284

THEODORE CHRISTENSON and THOMAS H. TAGGART, *Appellants,* v. GEORGE A. OHRMAN, *Appellee.*

(156 P. 2d 848)

Opinion filed March 10, 1945.

*Thomas H. Taggart* and *Charles G. Dockhorn,* both of Goodland, were on the briefs for the appellants.

*Elmer E. Euwer,* of Goodland, was on the briefs for the appellee.

The opinion of the court was delivered by

BURCH, J.: This action involves a dispute between a landlord and a tenant over the right of the tenant to recover certain wheat, or its value, which was grown on a part of the land involved after the tenant had been notified to vacate all of the farm.

The case was submitted to the district court upon an agreed statement of facts and was submitted, upon appeal, to this court without oral argument.

Stripped of its uncontroversial details, the factual picture is as follows:

Appellee was a tenant on a certain farm consisting of 160 acres by reason of his having entered into a written lease with the owner, Daniel Boyer. The written lease ended as of March 1, 1938, but appellee, by holding over, continued in possession of the land until the summer of 1941, at which time the owner notified appellee by letter that the owner had rented the land for the 1942 crop year to one of the appellants, namely, Ted Christenson. The letter enclosed a notice to vacate and also contained a statement to the effect that appellee should allow Ted Christenson to enter upon the land and prepare the same for the purpose of sowing small grain for the 1942 crop year.

Prior to receipt of such letter, the appellee had disked and summer-fallowed about sixty acres of the land. The last work had been done in July, just prior to the receipt of the letter which was dated July 27th. After receipt of such letter the appellee and the owner exchanged letters, in which appellee objected to being dispossessed of that portion of the land which he had summer-fallowed; complained because he had not been previously notified; demanded that he be paid for his labor in connection with the summer-fallowing, or, in the alternative, that he be allowed to plant the sixty acres.

The correspondence referred to thus far is significant only in showing that a dispute existed between the respective parties. Careful examination of the same does not disclose any other points therein which are of legal consequence.

Proper construction of the final letter written by the landlord to the appellee, however, develops a legal question and, therefore, particular consideration must be given to its contents. The final letter from the owner to the appellee read as follows:

"Received your letter of the 29th wherein you state that you want one dollar per acre for the 60 acres of summer-fallowing. I will not and cannot pay for any work you have done and may be entitled to. *If, therefore, you think that you are doing the right thing, you may plant the 60 acres in a fall crop.* I do feel, however, that is not the proper attitude for you to take. While you say that you did not receive my letter of 15th day of May, a letter was mailed you advising you of the fact that I had rented the land to Mr. Christenson, and that you were to vacate the farm March 1st, 1941 [sic]. This letter was not returned to me although I had my return card on the letter. You also advised that Mr. Christenson had not said anything to you in regards to he renting the farm. I received a letter from Mr. Christenson soon after he received a letter I had written him on May 15th that he thought that he might have a

little difficulty in planting the fall crop on this farm. From these facts it would appear to me that you were advised of the fact that the land was leased to Mr. Christenson. *But let that be as it is, if you insist on putting in a fall crop on the summer-fallowed land, I am assuming that it will be your privilege to do so, but do feel that you are not doing the right thing by me if you do so.*

*"Am satisfied that this matter can be ironed out by Mr. Christenson putting in his fall crop on the ground where you had small grain this year, and Mr. Christenson can use the summer-fallowed land to other crops next spring. I am writing Mr. Christenson in regards to this matter today."* (Italics supplied).

After receipt of the foregoing letter, which was dated the 31st day of July, 1941, appellee drilled wheat upon 58.8 acres of the land. Either before or after such date, the appellant, Ted Christenson, entered upon the remaining part of the 160 acres under the terms and provisions of a written lease which he had obtained from the owner, Daniel Boyer, as of the 16th day of May, 1941, and he also between July 24th and July 31st pulled onto the summer-fallowed land and unit-tilled approximately four acres of the sixty acres in question and later, during the fore part of August, appellant Christenson made about four rounds along the south side of the summer-fallowed land. When the appellee came to the land to see about cutting the wheat on July 18, 1942, he found that the appellant, Ted Christenson, had hired a combine and that most of the wheat had been harvested. The stipulation states that the grain was hauled and sold to an elevator and that the wheat tickets were made out to the appellants, Ted Christenson and Tom Taggart.

The parties stipulated further that there were grown and harvested on the summer-fallowed land 968 bushels and 20 pounds of winter wheat of the market value of 88 cents per bushel; that one-fourth of the wheat belonged to the owner of the land, Daniel Boyer, who had been paid the proper sum of $213.03 therefor; and that one D. Maness, who combined and hauled the wheat to the grain company, had been paid therefor the sum of $189.02. It was further stipulated that the appellee had made due demand upon the appellants for return of the wheat or the value thereof.

From the stipulated evidence the trial court found that the appellee was in possession of 58.8 acres of fall wheat growing on the land; that he had never been legally dispossessed therefrom; that, therefore, he was entitled to receive the balance of the money on hand after allowing the referred-to deductions; and entered judgment for appellee in the amount of $450.06.

A motion for a new trial was filed and overruled, and notice of appeal properly perfected.

1. The first contention asserted by the appellants is that the appellee, in surrendering part of the land, necessarily, as a matter of law, surrendered all the land covered by the lease. In support of such contention appellants cite a quotation from 32 Am. Jur. 762, which reads as follows:

"As implied in the definition of the term, surrender extinguishes all interest of the tenant in the term and consequently all rights conditioned upon its continuance. Thus, it extinguishes all rights of the lessee to the growing crops; and where, in the case of a lease of farming lands, the lessee had done fall plowing and thereafter surrendered the term, it was held that he had no claim against the lessor for the reasonable value of such plowing, although it inured to the benefit of the lessor."

Such a rule of law may be applicable in instances where there has been a complete and unconditional surrender by the tenant, and most, if not all, of the cases cited by the writer of the text in support of the general statement are instances wherein the facts show clearly a complete and unconditional surrender. For example, in the supporting case of *Smith v. Sprague,* 119 Mich. 148, 77 N. W. 689, 75 Am. St. Rep. 384, the tenant moved off and abandoned the farm without the knowledge or consent of the landlord. Later he returned to cut some wheat which he had sowed on the land, and it was held that under such circumstances the wheat belonged to the landlord.

The facts were similar in the cited case of *Hill v. Groves,* 209 Iowa 45, 227 N. W. 582. In such case, the tenant moved off the farm because a receiver for a bank was threatening to take over much of his personal property and equipment under a chattel mortgage which had been given to the bank. No agreement whatever was entered into with the landlord.

In the case of *Boyd v. Gore,* 143 Wis. 531, 128 N. W. 68, 21 Ann. Cas. 1263, there was a voluntary unconditional surrender. The writer of the opinion, however, carefully noted that while surrender may terminate the lease, it does not necessarily terminate liabilities which have already accrued (citing 2 Tiffany on Landlord and Tenant, pp. 1348, 1349).

In the instant case, surely it can be said fairly that at the time the appellee made any surrender of the premises, the liabilities, if any, incident to the raising of the wheat upon the 58.8 acres, had accrued. The mere fact that the extent of the liabilities, if any, had not been determined at such date, would not be controlling. In the

case of *Casper Nat'l Bank v. Curry*, 51 Wyo. 284, 65 P. 2d 1116, 110 A. L. R. 360, cited by the text, the first paragraph of the syllabus reads as follows:

"Surrender of lease terminates relation of landlord and tenant between the parties, but does not terminate the relation of debtor and creditor on account of liabilities already incurred at the time agreed surrender of lease is carried into effect by delivery of possession of premises."

In the instant case there was not an unconditional surrender of possession of the entire premises.

In considering the question of surrender, the distinction should be borne in mind that surrenders are of two kinds: that is, either by agreement of the parties, or by operation of law.

It cannot be said that there was a complete, unconditional surrender entered into in this case by agreement of the parties as to the 58.8 acres involved. To so hold would require one to ignore the controversy developed by the documentary evidence. Therefore, it follows that if there was a complete, unconditional surrender present in the instant case, it must have arisen by operation of law. Even surrenders arising by operation of law will not be implied against the intent of the parties. The following statement from the text cited by appellants is perhaps sufficient authority for such a rule:

". . . a surrender will not be implied against the intent of the parties, as manifested by their acts; when such intention cannot be presumed without doing violence to common sense, the presumption will not be supported." (32 Am. Jur. 766, § 905.)

Appellants, however, insist that a surrender of the term destroys all rights thereafter to accrue under the lease which are dependent upon the continuance of the term and they assert that since it has been held that a right of renewal is indivisible, therefore, the right does not entitle the lessee to demand a renewal as to part of the premises. In support of this they quote again from 32 Am. Jur. 818, § 974, the following:

". . . a surrender of the term as to a part will destroy the lessee's right to a renewal, even as regards the portion of the premises retained by him."

They also quote the following:

"A general covenant to renew is indivisible and must be exercised in its entirety, and therefore does not confer a right to demand a renewal as to part only of the premises." (32 Am. Jur. 804, § 954.)

The difficulty with the application of the doctrine to the facts in the present case arises primarily because the case does not present

an instance of the renewal of the lease but on the contrary is an instance of a conditional surrender by agreement of the parties. The rule which appellants would apply would be in point in case a tenant, for instance, having leased a farm consisting of 160 acres by holding over, attempted to extend the term insofar as it covered only 80 acres of the same farm. The rule is well established, however, that the landlord may elect to take possession of a part of the premises and to treat the tenant as a tenant holding over as to the part of which he remains in possession. (See *Harwood v. Meloney*, 139 Minn. 212, 166 N. W. 125, L. R. A. 1918C 118.)

Some confusion injects itself into legal language over the distinction between "surrender of a term" as against "surrender of possession." A distinction also exists between the use of the words "abandonment" and "surrender". (See *Kimberlin v. Hicks*, 150 Kan. 449, 454, 94 P. 2d 335.) However, this case does not require a discussion of the distinctions in order that a proper conclusion can be reached. As has been hereinbefore stated, a surrender by operation of law will not be implied where the intent of the parties, as manifested by their acts, compels a different conclusion. Insofar as surrender by agreement of the parties is concerned, it has been determined that such a cancellation can only occur where both the landlord and the lessee mutually consent to the cancellation. (See *O'Neal v. Bainbridge*, 94 Kan. 518, syl. ¶ 3, 146 Pac. 1165.)

In the present case the tenant clearly did not consent to a cancellation of the lease insofar as the 58.8 acres were concerned. In direct contradiction to such a contention, the evidence did establish that the landlord and the tenant mutually considered that the tenant should be permitted to plant not to exceed sixty acres in a fall crop. Such being the case, it could be shown, even by parol testimony, that the terms of the original lease were changed materially, after execution thereof, by mutual understanding and agreement between the parties. (*See Rogers v. Dockstader*, 90 Kan. 189, 133 Pac. 717, and *Weigand v. Leber*, 120 Kan. 704, 244 Pac. 1038.) Consequently, it must follow that the trial court was correct in its ruling in such respect.

2. Appellants also advance the contention that the correspondence between the parties cannot be construed as an agreement between them to lease a portion of the land. They contend that the letter written July 1, 1941, to appellee by Boyer was nothing more than an attempt to negotiate a settlement conditioned on the consent of

the new tenant; that it was a proposal merely to open negotiations and that it could not be binding until it was definitely accepted. The rule is elementary but in the instant case the documentary evidence conclusively establishes that the rule is not applicable. There is nothing conditional about statements such as these:

"If, therefore, you think that you are doing the right thing, you may plant the 60 acres in a fall crop.

"But let that be as it is, if you insist on putting in a fall crop on the summer-fallowed land, I am assuming that it will be your privilege to do so, but do feel that you are not doing the right thing by me if you do so. . . . Am satisfied that this matter can be ironed out by Mr. Christenson putting in his fall· crop on the ground where you had small grain this year, and 'Mr. Christenson can use the summer-fallowed land to other crops next spring."

Appellants say that the closing line of the letter made the above statements conditional. It reads as follows:

"I am writing Mr. Christenson in regards to this matter today."

Nothing was said about requiring the consent of Mr. Christenson and nothing further appears in the record relative to the matter. Acting under such assurances, the tenant planted the crop, cultivated it and attempted to harvest it. As between landlord and tenant, the rule of construction is as follows:

"As a general rule, in construing provisions relating to renewals, where there is any uncertainty, the tenant is favored, and not the landlord, because the latter, having the power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself." (32 Am. Jur. 809, § 962.)

Abundant citations are given in the footnote in support of the text, and strange as it may seem, no decisions to the contrary are noted or referred to. Application of the rule obviously justified a ruling by the trial court to the effect that appellants' contention was not sound.

Appellants and appellee disagree as to whether it was necessary that an action be brought to dispossess the tenant. In view of what has been said the point becomes pointless in this appeal.

The judgment of the trial court is affirmed.