No. 41,347

FRANCES J. SMITH, JOHN J. SMITH and BETTY ELLEN GROSS, *Appellees*, v. EVERETT RUSS, *Appellant*.

(339 P. 2d 286)

Opinion filed May 16, 1959.

*Robert Osborn*, of Stockton, argued the cause and was on the brief for appellant.

*D. A. Hindman*, of Stockton, argued the cause, and *Stanley Krysl*, also of Stockton, was with him on the brief for appellees.

The opinion of the court was delivered by

SCHROEDER, J.: This is an ejectment action. Whether the action is proper depends upon an interpretation of the provisions of a written farm lease between the parties.

The principal question is whether the tenant may at his option extend the lease without the written consent of the landlords.

Issues were joined by the pleadings and the case was submitted to the district court upon an agreed statement of facts at a pretrial conference.

On March 4, 1955, the parties entered into a written farm lease, whereby the appellees leased certain farm properties to the appellant for a primary term of three years, ending March 1, 1958. It contained an option provision whereby the appellant might extend the lease for an additional five years, or until March 1, 1963. This lease was drawn by the attorneys for the appellees and the controversy concerns two provisions thereof, the interpretation of which is the basis for this lawsuit. They are as follows:

"[1] SECOND PARTY shall not re-lease or sublease said premises, or any portion thereof or assign this lease nor shall there be any renewal or extension of the same without the written consent of the parties of the first part.

. . . . . . . . . . . . .

"[2] SECOND PARTY has the option of extending this lease for an additional five (5) years from March 1st, 1958 to March 1st, 1963, upon the following terms, to-wit:

"1. He agrees to pay the sum of $3.00 cash rent for land that is set aside for feed ground and $2.50 per acre for grass land, to be paid after the crop has matured or harvested, and at the end of each grazing season.

"2. In addition he shall pay to First Parties the usual and customary ⅓ of all small grain raised on said premises, the same to be delivered free of cost to market for the benefit of First Parties, the alfalfa crop or land shall be handled on the same basis as stated aforesaid:

"3. In order to exercise this option for additional five year lease, it shall be necessary that Second Party notify First Parties in writing of his intention to exercise said option. Said notice shall be sent by registered mail to Frances J. Smith, at Codell, Kansas and notice to her shall constitute notice to all parties to this agreement. Said notice shall be placed in the United States mails on or before January 1st, 1958. In the event Second Party does not exercise this option, he shall have the privilege of re-entering upon said premises after March 1, 1958, for the purpose of harvesting the wheat crop which he plants thereon in the fall of 1957. In the event this option is exercised, First Parties shall have the privilege of entering upon said premises as soon as Second Party has harvested the grain grown thereon for the purpose of preparing the land and seeding for the period of 1963."

The second party in the lease is the tenant (appellant) and the parties of the first part are the landlords (appellees).

The appellant gave the appellees written notice of his intention to extend the lease on December 2, 1957, within the period provided in the lease for such notice. The appellees on the 5th day of December, 1957, gave the appellant written notice to vacate the premises on or before the 1st day of March, 1958, and further indicated that they were giving such notice for the purpose of advising the appellant that the appellees had no intention of consenting to the renewal or extension of said lease in writing as provided in said lease, or otherwise, and in order that there be no misunderstanding.

The trial court requested briefs and took the case under advisement, following which it found that the appellees were required to consent to a renewal or extension of the lease and thereupon entered judgment for the appellees. Appeal was taken from this order.

The trial court further found that the appellant remained in possession and farmed the land during the year 1958, the same as if he had a valid lease, and was therefore a hold-over tenant from year to year under the terms of the original lease. The court decreed that the lease of the appellant expired the 1st day of March, 1959, and required no further notice to the appellant. A cross appeal was taken from this order, but March 1, 1959, having since expired, the parties agree that the cross appeal is moot.

The parties to this action during the primary term of the lease were involved in another lawsuit concerning this lease. That action was by the landlords for reformation of the written lease and for cancellation. A demurrer was sustained to the evidence on reformation of the lease, and after hearing all the evidence regarding cancellation the trial court held that the breaches by the tenant, if any, were not such as would justify a cancellation of the lease.

Appellant now asserts that the question here presented could have been litigated in the prior action and the question here presented is *res judicata*. The appellant contends the lease was before the lower court for interpretation in the first action. (But the record discloses it was not on the point here in controversy.) He argues that it is elementary law that a judgment between parties is conclusive as to every matter actually litigated, and to every matter that might have been litigated in the original action. (Citing: *Townsdin v. Shrader*, 39 Kan. 286, 18 Pac. 186; *Sanford v.*

*Oberlin College,* 50 Kan. 342, 31 Pac. 1089; *Dixon v. Caster,* 65 Kan. 739, 70 Pac. 871; and *Ullrich v. Bigger,* 81 Kan. 756, 106 Pac. 1073.)

The rule that a judgment in bar, or as evidence in estoppel, is binding, not only as to every question actually presented and considered and as to which the court rested its decision, but also to every question which might have been presented and decided, does not apply to a different cause of action between the same parties except as to questions shown to have been actually decided in the former action. (*Stroup v. Pepper,* 69 Kan. 241, 76 Pac. 825; and *Topeka State Bank v. Waters,* 121 Kan. 126, 245 Pac. 1028.)

The former litigation between the parties was during the primary term of the lease and at that time it was not anticipated that there would be a controversy concerning the option provisions in the lease. At the time the former action was pending it was not even known whether the appellant in this action would desire to exercise his option under the provisions of the lease. Courts will not express an opinion upon an abstract question which does not arise on existing facts or rights, or where it is sought merely to obtain the opinion of the court upon a question of law. (*Duggan v. Emporia,* 84 Kan. 429, 114 Pac. 235, and cases cited therein.) We have no hesitance in holding that the former action is not a bar to the controversy presented in this action.

Appellant in his brief makes the observation that the provision of the lease above designated as number [1] was taken entirely from a farm lease form in general use among the attorneys in Rooks County, and attaches a copy of such lease form as an appendix to his brief. The clause in question is the seventh paragraph in this form lease and a comparison of the first few paragraphs of the lease in question indicates that the form lease was apparently used as a model by the scrivener in other respects. Appellant asserts that courts generally hold when a lease contains in the printed part a covenant to surrender at the end of the term, while the written part gives a right to renewal of the lease, the latter part controls. (Citing 32 Am. Jur., Landlord and Tenant, § 960, p. 808.)

It must be noted the parties agreed at the pretrial conference the lease in question was completely typewritten and that no part thereof was in printed form. The above rule of law cited by the appellant therefore has no application.

In actions founded upon written instruments, where the rights of parties relative to the terms thereof are in controversy, certain

fundamental legal concepts permeate the law relative to the interpretation or construction of such instruments. These rules have been stated many times and are summarized in *Custom Built Homes Co. v. State Comm. of Rev. & Taxation,* 184 Kan. 31, 334 P. 2d 808.

Turning now to the provisions of the farm lease in controversy it is quite apparent that any interpretation by the standards customarily recognized leads to the simple conclusion that we have two repugnant provisions which cannot be reconciled.

The first provision [1] in sequence appearing in the lease is unnumbered paragraph twelve. It makes reference to "renewal or extension" of the lease in a separate clause relating also to re-lease, sublease and assignment. Clearly, it is a *general clause* pertaining to the several things enumerated. This general provision denies any renewal or extension of the lease without the written consent of the landlords.

The second provision [2] in sequence appearing in the lease is unnumbered paragraph fourteen. The *option* given in this provision is a separate agreement dealing fully with the rights of the tenant (appellant) to extend the lease for an additional five years. It is a *special, distinct agreement* binding by consideration flowing from the lease itself and dealing with extension of the lease only. It specifically provides the means by which the option is to be exercised, paritcularly in subparagraph 3 as to the giving of notice to the landlords. The terms of the lease upon exercise of the option are specified and in some respects alter the terms specified during the primary term of the lease.

An option is a choice or the right to choose. In the law of contracts by the use of the term "option" is normally meant a *legally binding option.* The option is binding upon the party who gives it where the mutual assent is clear and there is legally sufficient consideration for the agreement. As applied to the farm lease in question provision [2] is a separate and distinct agreement for extension of the lease. It is a binding option contract. To say that written consent of the appellees was required for the tenant to exercise this option would be equivalent to excision of the option provisions from the lease.

The appellees contend the circumstances in this case justify the application, if necessary, of the rule that the first of two repugnant clauses in an instrument prevails. Syllabus ¶ 3 in *Utilities Co. v. Bowersock,* 109 Kan. 718, 202 Pac. 92, is cited for this proposition. We do not so construe the *Bowersock* case which held the provi-

sions of the contract there in controversy to be consistent with each other upon interpretation of the instrument as a whole.

In *Chaplin v. Chaplin,* 105 Kan. 481, 184 Pac. 984, the court said:

"The appellants invoke the rule that in construing a deed the first of two repugnant clauses must control . . . while in some circumstances there may still be a field for the operation of that rule, it cannot prevail against the practice in this jurisdiction of endeavoring to ascertain the actual intention of of the grantor from a consideration of all parts of the deed . . ." (p. 482.)

Appellees contend the two clauses in the farm lease under consideration are not repugnant, stating:

". . . We think they can, and should be construed together and so construing they give the complete ceremony of how the lease could be renewed or extended for an additional five years. This consisted of first, notice by the tenant that he intended to or desired to renew or extend the lease; and second, written consent by the lessors to said renewal or extension. This is in line with the usual rule of construction applied by our Kansas court which is to give effect to all parts of the instrument, if possible, otherwise referred to as the 'four corners' rule of construction . . ."

Courts generally endeavor to ascertain the intention of the parties where a controversy arises concerning a written instrument and there is ambiguity or uncertainty involved. The general rule is that these instruments are to be interpreted from their "four corners." That is to say, that all the language used anywhere in the instrument should be taken into consideration and construed in harmony with other portions of the instrument. (*Skelly Oil Co. v. Cities Service Oil Co.,* 160 Kan. 226, 160 P. 2d 246; *Heckard v. Park,* 164 Kan. 216, 188 P. 2d 926; and see *Berg v. Scully,* 120 Kan. 637, 245 Pac. 119.)

The difficulty in applying the foregoing rule to the facts in the case presently before the court is that we find it impossible to reconcile the two provisions which are repugnant.

Appellees rely on *Burchfield v. Brinkman,* 92 Kan. 377, 140 Pac. 894. (And see, 81 A. L. R. 1058.) The lease there provided: "'It is further agreed that after the expiration of this lease the party of the second part shall have the option for a further period of five years from that date, *provided that the terms and conditions are satisfactory to both parties of this lease.'*" (Emphasis added.) (p. 379.) Such cases have no application to the facts presently before the court. Likewise, provisions in a lease giving a lessee the right "'. . . to the first option in case they may desire to continue to occupy said premises under a new lease after the expiration of the present term, . . .'" as in *Landowners Company v. Pendry,* 151

Kan. 674, 675, 100 P. 2d 632, were held merely to give a preferential right to re-lease in the event the lessor did not desire to sell or occupy the premises, and have no application here.

Resort to two familiar rules of construction control the decision herein. First, where there is an uncertainty between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provisions. (Restatement of Law, Contracts, Volume 1, § 236[c], p. 330; and 12 Am. Jur., Contracts, § 244, p. 779.) It is a reasonable inference that specific provisions express more exactly what parties intend than broad or general clauses which do not necessarily indicate that the parties had the particular matter in thought.

Second, where words or other manifestations of intention bear more than one reasonable meaning, an interpretation is preferred which operates more strongly against the party from whom they proceed. (Restatement of Law, Contracts, Volume 1, § 236[d], p. 330.) Since one who speaks or writes can, by exactness of expression, more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from the ambiguity of language are resolved against the former in favor of the latter. This rule has been given specific application to a farm tenancy lease in *Christenson v. Ohrman,* 159 Kan. 565, 156 P. 2d 848, where it was held as a general rule, in construing the provisions relating to renewals or extensions of leases between landlord and tenant, where there is an uncertainty, the tenant is favored and not the landlord. (32 Am. Jur., Landlord and Tenant, § 962, p. 809.) Here it is conceded counsel for the appellees prepared the farm lease in question.

Upon application of the foregoing rules of construction we hold the general provision [1] in the lease here under consideration, requiring the written consent of the landlord for a renewal of the lease, must yield to the specific provision [2] giving to the tenant an option to extend the lease for an additional period of five years, and that the trial court erred in entering judgment for the appellees. The judgment is reversed.