NOT DESIGNATED FOR PUBLICATION

No. 120,519

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

PHYLLIS J. STONE,
*Appellee*,

v.

BILLY D. STONE; and ELNORA A. STONE REVOCABLE TRUST NO. 1,
*Appellants*,

and

O'BRATE REALTY, L.L.C.; WHEATLAND ELECTRIC COOPERATIVE, INC.; et al.,
*Defendants*.

MEMORANDUM OPINION

Appeal from Finney District Court; MICHAEL L. QUINT, judge. Opinion filed September 20, 2019. Affirmed.

*Michael K. Ramsey*, of Hope, Mills, Bolin, Collins & Ramsey, of Garden City, for appellants.

*Jacob M. Cunningham* and *Randall D. Grisell*, of Doering, Grisell & Cunningham, P.A., of Garden City, for appellee.

Before POWELL, P.J., GARDNER, J., and LAHEY, S.J.

PER CURIAM: Billy D. Stone and Phyllis J. Stone were bequeathed various real estate, surface rights, and mineral interests upon the death of Billy's father, Arthur. Billy and Phyllis subsequently divorced and entered into a property settlement agreement purporting to resolve their interests in their properties. A dispute arose as to the nature

1

and extent of Phyllis' interest in the mineral rights from Arthur's estate, prompting her to file a quiet title action to resolve the dispute. Ultimately, the district court granted Phyllis summary judgment, holding that according to the divorce property settlement agreement, Phyllis had received a one-half interest in the mineral interests bequeathed by Arthur's estate; quieted title to her in these interests; and ordered an accounting of any royalties paid. Billy now appeals, arguing the language of their property settlement agreement clearly and unambiguously assigned such mineral interests to him. Alternatively, Billy also contends that if the language of the property settlement agreement is ambiguous, there exists a genuine issue of material fact as to the intent of the parties. Finally, Billy argues Phyllis failed to describe her mineral interests in the case below. For the reasons we more fully explain below, we affirm the district court's grant of summary judgment in favor of Phyllis.

FACTUAL AND PROCEDURAL BACKGROUND

Billy and Phyllis married in 1964. Billy is the son of Arthur and Elnora Stone. Arthur, who died in 1991, owned real estate, surface rights, and mineral interests in Finney County, and his will bequeathed his real property and mineral interests to Billy and Phyllis, subject to Elnora's life estate. Arthur's estate was settled in 1994, following the express provisions of Arthur's will.

Billy filed for divorce from Phyllis a year later. Through their attorneys, Billy and Phyllis negotiated and finalized a property settlement agreement. The journal entry of divorce incorporates their agreement.

Elnora died in 2013. Her transfer on death deed conveyed her oil, gas, and other mineral interests to the Elnora A. Stone Revocable Trust No. 1 (the Trust). That same year, Billy conveyed some of his mineral interests to Tom Willis, and Willis later conveyed those interests to O'Brate Realty.

2

In 2014, Phyllis petitioned the district court to quiet title to the mineral interests she received from Arthur's estate. Phyllis alleged Billy, the Trust, and O'Brate Realty had adverse interests in those mineral interests. Phyllis asked the district court to impose a constructive trust and order an accounting for all royalties paid after Elnora's death. Billy answered and denied Phyllis had any claims to the mineral interests. He argued the property settlement agreement from their divorce granted him all of the mineral interests from Arthur's estate. O'Brate Realty and the Trust also answered Phyllis' petition.

Phyllis later moved for summary judgment, claiming the property settlement agreement granted her a fractional mineral interest. To support her claim, Phyllis submitted Arthur's will, the journal entry for Arthur's estate, a draft property settlement agreement from the divorce, letters from the divorce attorneys, an affidavit from her divorce attorney, and filed copies of the property settlement agreement and journal entry of divorce.

Billy opposed Phyllis' motion and attached his own affidavit, several deeds transferring property from Arthur and Elnora to Billy and Phyllis, an affidavit of mineral ownership, and a quitclaim deed from Phyllis to Billy. Billy argued the property settlement agreement granted him all of the mineral interests and that the parties had intended for Phyllis to retain only surface rights to the land she inherited from Arthur's estate. Billy claimed Phyllis' subsequent conduct showed this intent because she later signed a quitclaim deed to Billy transferring some mineral interests to him.

The district court granted Phyllis' motion for summary judgment without providing any findings of fact. Billy objected to the district court's order, claiming the court made insufficient findings of fact, moved for additional findings, and sought to alter or amend the judgment. The district court denied his request to amend the judgment but granted the request for sufficient findings of fact, in part because Phyllis agreed to the request.

3

The district court made several findings of facts. It found the first property settlement agreement lacked a provision that Phyllis would retain all of her interest in Arthur's estate. Based on the letter from Billy's divorce attorney and an affidavit from Phyllis' divorce attorney, the district court determined that Billy told his attorney to revise the property settlement agreement. The district court also found that the property settlement agreement was revised to reflect that Phyllis retained her mineral interests in Arthur's estate.

The district court also made additional conclusions of law. The district court ruled that Phyllis owned fractional mineral interests because of the will, the journal entry of final settlement in Arthur's estate, the journal entry of divorce, and the property settlement agreement. The district court held: "There is nothing in the *Property Settlement Agreement* which set aside to Billy Stone, Phyllis Stone's mineral interests from [Arthur's estate], as those mineral interests are described in Paragraphs 15 and 39 of [Phyllis'] *Petition*." The district court concluded Billy only conveyed a one-half mineral interest to Tom Willis, who in turn conveyed a one-half mineral interest to O'Brate Realty.

Billy timely appeals.

I.      THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO PHYLLIS STONE.

First, Billy argues the district court erred in granting summary judgment because it misinterpreted the parties' divorce property settlement agreement. The interpretation of a written instrument, like the property settlement agreement and journal entry of divorce here, is a matter of law subject to unlimited review. See *In re Estate of Einsel*, 304 Kan. 567, 579, 374 P.3d 612 (2016). We are not bound by the lower court's interpretation of

4

written instruments. *Prairie Land Elec. Co-op v. Kansas Elec. Power Co-op*, 299 Kan. 360, 366, 323 P.3d 1270 (2014).

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.' [Citations omitted.]" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013).

> "'"[I]nterpretation of a contractual provision should not be reached merely by isolating one particular sentence or provision, but by construing and considering the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided." [Citations omitted.]'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

If, however, the court finds a written contract's language to be ambiguous, the court may consider extrinsic or parol evidence to interpret the contract. 296 Kan. at 963.

> "A written instrument is ambiguous when the application of rules of interpretation to the [document] fails to ascertain which one of two or more meanings is conveyed by the parties' words. Where ambiguity or uncertainty is involved, the parties' intentions are ascertained by considering the language employed, the circumstances existing when the agreement was made, the object sought, and other circumstances tending to clarify the parties' real intentions. [Citations omitted.]" *Byers v. Snyder*, 44 Kan. App. 2d 380, 386, 237 P.3d 1258 (2010), *rev. denied* 292 Kan. 964 (2011).

Billy argues the district court erred in relying on evidence outside the property settlement agreement. He claims the district court never determined whether the agreement was ambiguous. Billy is correct that the district court failed to explicitly find the property settlement agreement ambiguous, but the district court implicitly did so because it relied on Arthur's will and the journal entry in Arthur's estate to determine the

5

parties' intent. This failure is of no consequence, however, because we find the property settlement agreement is ambiguous.

A.      *Paragraphs 1.i. and 2.a. of the Property Settlement Agreement Are Ambiguous.*

The property settlement agreement provides, in relevant part, that:

"1.      i.  The Respondent [Phyllis] will retain all of her interest in the Estate of F.A. Stone, District Court Finney County, Case No. 91-P-48.

"2.      The Petitioner [Billy] shall have as his sole and separate property, free and clear of any right, title or interest on the part of the Respondent, the following:

a.  All of the remaining personal and real property of the parties including, but not limited to, all interest in Stone Acres, Inc.; all of the Petitioner's [Billy's] interest in the Estate of F.A. Stone, District Court Finney County, Case No. 91-P-48; all minerals including, but not limited to, oil and gas and production thereof; and all other realty and personalty of every type and character whatsoever and not specifically set over to the Respondent [Phyllis] in the above paragraph."

Billy and Phyllis' property settlement agreement makes no other provisions concerning any real property interests. It also includes no other descriptions of real property, mineral interests, or royalties. The parties' journal entry of divorce incorporates their property settlement agreement but provides no other property division. The language quoted above is the complete writing of how the parties intended to divide the mineral interests. We read the writing as incomplete because when read together, the above provisions do not convey only one reasonable interpretation of how Billy and Phyllis intended to divide the mineral interests. See *Byers*, 44 Kan. App. 2d at 386. When read as a whole, paragraphs 1.i. and 2.a. of the property settlement agreement are ambiguous for reasons explored below.

6

Billy contends there is only one reasonable interpretation because "all minerals including, but not limited to, oil and gas and production thereof" in paragraph 2.a. is not ambiguous. According to Billy, he keeps all of the mineral interests both he and Phyllis received from Arthur's estate. However, we cannot interpret their agreement by reading paragraph 2.a. alone. Instead, we must read it with paragraph 1.i. See *Waste Connections*, 296 Kan. at 963.

Under paragraph 1.i., the parties intended Phyllis to "retain all of her interest in the Estate of F.A. Stone, District Court Finney County, Case No. 91-P-48." Under paragraph 2.a., the parties intended for Billy to keep

> "[a]ll of the remaining personal and real property of the parties including, but not limited to all interest in Stone Acres, Inc.; all of [Billy's] interest in the Estate of F.A. Stone, District Court Finney County, Case No. 91-P-48; all minerals including, but not limited to, oil and gas and production thereof; and all other realty and personalty of every type and character whatsoever and not specifically set over to the Respondent in the above paragraph."

When reading paragraph 1.i. and paragraph 2.a. together, Billy argues there is no conflict because of one rule of contract interpretation—specific language or phrases control over general language or phrases. "'[S]pecific provisions express more exactly what parties intend than broad or general clauses which do not necessarily indicate that the parties had the particular matter in thought.' 184 Kan. at 779." *Colburn v. Parker & Parsley Dev. Co.*, 17 Kan. App. 2d 638, 649, 842 P.2d 321 (1992). Billy contends the term "minerals" in paragraph 2.a. is specific language controlling over Phyllis' "interest" in paragraph 1.i. While Billy correctly provides the rule, he offers too narrow of a reading of the two paragraphs.

Cases addressing whether a specific provision controls a general provision do so by comparing all of the language in the different provisions, not by viewing single words

7

out of context. See, e.g., *Smith v. Russ*, 184 Kan. 773, 779, 339 P.2d 286 (1959) (finding option paragraphs allowing for renewal if certain conditions met controlled over general sentence excluding renewal of lease); *Exchange State Bank v. Kansas Bankers Surety Co.*, 39 Kan. App. 2d 232, 240-41, 177 P.3d 1284 (determining exclusions of coverage paragraph controlled over general introductory sentence in insurance policy), *rev. denied* 286 Kan. 1177 (2008); *Colburn*, 17 Kan. App. 2d at 649 (noting paragraph governing specific pricing controlled general language of subordination clause of saltwater disposal agreement). Billy's narrow reading of "minerals" as more specific than "interest" ignores the plain language in paragraph 1.i. that grants Phyllis "*all* of her interest."

A complete reading of paragraph 1.i. suggests a conflict between Phyllis retaining "all of her interest" in Arthur's estate with Billy's right to retain "all minerals" in paragraph 2.a. However, we cannot determine the extent of the conflict between these paragraphs without first resolving the ambiguity of the parties' interests in Arthur's estate.

Billy contends there is no ambiguity here. He claims Phyllis inherited "mineral interests and substantial surface land interests" from Arthur's estate, and they intended for Phyllis to keep the surface interests but lose mineral interests. The four corners of the property settlement agreement are silent about any surface land interests inherited by Phyllis or Billy. Similarly, the agreement does not explain whether Phyllis or Billy received any mineral interests from Arthur's estate. Based only on the agreement's language, no reader can determine whether "all minerals" in paragraph 2.a. is intended to modify some mineral interests Phyllis may have inherited. The agreement's ambiguity requires us to examine the parol evidence in the record to resolve what interests the parties received from Arthur's estate. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

Looking at the estate documents—the will and the journal entry in Arthur's probate estate case—Arthur bequeathed Elnora a life estate to surface rights of 8 parcels

of land, mineral interests to 12 parcels, and the residue of his estate. Arthur bequeathed Billy and Phyllis the remainder interest in equal, undivided shares. The parties' property settlement agreement provides:

"1.    i. [Phyllis] will retain all of her [remainder interest in the surface rights, mineral interests, and residue of Arthur's estate, in equal undivided shares].

"2.    [Billy] shall have as his sole and separate property, free and clear of any right, title or interest on the part of [Phyllis], the following:

a. All of the remaining personal and real property of the parties including, but not limited to, all interest in Stone Acres, Inc.; all of [Billy's remainder interest in the surface rights, mineral interests, and residue of Arthur's estate, in equal undivided shares]; all minerals including, but not limited to, oil and gas and production thereof; and all other realty and personalty of every type and character whatsoever and not specifically set over to [Phyllis] in the above paragraph."

When reading this language in concert with the will and journal entry from Arthur's estate, paragraph 1.i. conflicts with paragraph 2.a. Paragraph 1.i. allows Phyllis to retain all of her mineral interests from Arthur's estate, but paragraph 2.a. grants Billy "all minerals." Because of this conflict between paragraphs 1.i. and 2.a., Phyllis correctly argues we must look outside the property settlement agreement at additional extrinsic evidence. See *Waste Connections of Kansas, Inc.*, 296 Kan. at 963.

However, before we determine what additional evidence we should consider, we must first address whether Billy presented a genuine issue of material fact to preclude summary judgment.

B.      *Billy Presented No Genuine Issue of Material Facts About the Mineral Rights from Arthur's Estate.*

When Billy opposed Phyllis' request for summary judgment, he included his own affidavit, several deeds transferring property, an affidavit of mineral ownership, and a quitclaim deed from Phyllis to Billy. Billy claims these documents show he and Phyllis intended for Phyllis to receive only surface rights from the property settlement agreement. In other words, he argues those documents create a genuine issue of material fact precluding summary judgment.

The standard of review for summary judgment is well known.

"'"Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal, we apply the same rules and when we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied."' [Citation omitted.]" *Patterson v. Cowley County, Kansas*, 307 Kan. 616, 621, 413 P.3d 432 (2018).

A genuine issue of material fact

"has legal controlling force as to the controlling issue. A disputed question of fact which is immaterial to the issue does not preclude summary judgment. In other words, if the disputed fact, however resolved, could not affect the judgment, it does not present a

'genuine issue' for purposes of summary judgment." *Sanchez v. U.S.D. No. 469*, 50 Kan. App. 2d 1185, 1192, 339 P.3d 399 (2014), *rev. denied* 302 Kan. 1011 (2015).

See *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 934, 296 P.3d 1106, *cert. denied* 571 U.S. 826 (2013).

According to Billy's affidavit and the deeds he provided, Arthur and Elnora gifted several tracts of land to Billy and Phyllis. Later, Arthur, Elnora, Billy, and Phyllis agreed that only the surface rights were transferred, not the mineral interests. Arthur, Elnora, Billy, and Phyllis signed an affidavit of mineral ownership that supports this claim. These events occurred several years before the divorce.

Four years after the divorce, Phyllis signed a quitclaim deed. The deed notes that "[Phyllis], in consideration of 'divorce settlement, Case No. 95-D-54, Finney County District Court', does by these presents convey and quitclaim, unto [Billy]" the gifted property "subject however, to the lien granted to [Phyllis] in said Case No. 95-D-54."

Billy claims these subsequent actions present a genuine issue of material fact. According to Billy, his affidavit and the quitclaim deed cast doubt on Phyllis' intent to retain the minerals she inherited from Arthur's estate. We are unpersuaded by Billy's argument because Billy's affidavit, the deeds from Arthur and Elnora to Billy and Phyllis, the affidavit of mineral ownership, and the quitclaim deed address the gifted property, not the property bequeathed from Arthur's estate. After the divorce, Phyllis granted her right to the gifted property to Billy. But this transaction does not speak to whether Phyllis' inherited property was to be transferred by paragraph 2.a. of the property settlement agreement or whether she was to retain it as expressly provided in paragraph 1.i. Billy presented no facts showing how this subsequent transaction demonstrates that the parties intended for Phyllis to transfer away her mineral interests from the estate. Because Billy's documents are irrelevant to the question at issue, they fail to create a genuine issue of

11

material fact. See *Northern Natural Gas Co.*, 296 Kan. at 934. Accordingly, we decline to use Billy's documents to resolve the ambiguity in the property settlement agreement.

C. *The Property Settlement Agreement Grants Phyllis the Right to Mineral Interests from Arthur's Estate.*

When Phyllis moved for summary judgment, she included letters from the divorce attorneys, an affidavit from her divorce attorney, and a draft copy of the property settlement agreement. Phyllis argues these documents show the parties intended for Phyllis to keep all of her mineral interests from Arthur's estate.

During the divorce, Billy's attorney sent a copy of the property settlement agreement to Phyllis' attorney. In the accompanying letter, Billy's attorney explained Billy had visited with him because "Phyllis was concerned that the [property settlement] agreement did not allow her to retain her interest in the Estate of F.A. Stone. That interest is retained on her behalf in paragraph 1.h."

In response, Phyllis' attorney wrote back to Billy's attorney, explaining:

"I enclose herewith a redrafted Property Settlement Agreement. You will note the changes as follows:

"At paragraph 1. f, we have clarified the amount and when it is to be paid.

"At Paragraph 1. h, we have secured the payments both before and after death.

"At paragraph 2. a, we have changed the language concerning the interest in the Arthur Stone Estate because it was in conflict with the provision which preserves to [Phyllis] all of her interest in the estate."

12

Phyllis included a draft property settlement agreement in her motion for summary judgment. It is unclear if this document is the agreement mentioned by Billy's divorce attorney or Phyllis' divorce attorney. The draft filed with the district court is missing the page that includes paragraph 1—the provision for Phyllis' property rights. It is also unclear if there were any other modifications or negotiations. Even so, the draft version of paragraph 2.a. differs from the final version because it provides to Billy:

"All of the remaining personal and real property of the parties including, but not limited to, all interest in Stone Acres, Inc.; *all real estate and other assets received by the parties by the Arthur Stone Estate*; all minerals including, but not limited to, oil and gas and production thereof; and all other realty and personalty of every type and character whatsoever and not specifically set over to [Phyllis] in the above paragraph." (Emphasis added.)

Paragraph 2.a. of the final agreement grants Billy:

"All of the remaining personal and real property of the parties including, but not limited to, all interest in Stone Acres, Inc.; *all of [Billy's] interest in the Estate of F.A. Stone, District Court Finney County, Case No. 91-P-48*; all minerals including, but not limited to, oil and gas and production thereof; and all other realty and personalty of every type and character whatsoever and not specifically set over to [Phyllis] in the above paragraph." (Emphasis added.)

Phyllis' divorce attorney signed an affidavit noting that the clear intent of Phyllis and Billy was to allow Phyllis to retain her 1/2 undivided interest in all of the Finney County, Kansas, property she inherited, including the mineral interests.

Given the content of these documents and their contemporaneous nature, it appears the parties intended for Phyllis to retain all of her interest in Arthur's estate, including her mineral interests. The district court did not err in making this finding:

13

"There is nothing in the Property Settlement Agreement which set aside to Billy Stone, Phyllis Stone's mineral interests from [Arthur's estate] as those mineral interests are described in Paragraphs 15 and 39 of [Phyllis'] Petition."

II.     THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT BECAUSE THE DESCRIPTION OF MINERAL INTERESTS WAS NOT A GENUINE ISSUE OF MATERIAL FACT.

Finally, Billy raises additional reasons to support his claim that the district court erred in granting summary judgment. He alleges that Phyllis did not provide statements of facts, title documents, or other exhibits describing the nature and extent of her mineral interests. As a result, Billy argues the district court erred in allowing Phyllis to quiet the title to the mineral interests. He also contends the district court erred by ordering the Trust and Billy to provide an accounting of royalties. We disagree.

Phyllis detailed the fractional interests to 14 tracts of land in paragraphs 15(a)-(n) of her petition. She incorporated those details by reference in her motion for summary judgment. Billy did not challenge those facts in his response to her motion. The district court's journal entry setting forth its findings of fact and conclusions of law notes:

"As a result of discussions between counsel for Plaintiff and Defendants Billy D. Stone and Elnora A. Stone Revocable Trust No. 1 following the hearing on September 17, 2018, it has been determined that neither Plaintiff, nor Defendants Billy D. Stone and Elnora A. Stone Revocable Trust No. 1, own any minerals described in Paragraph 15(e) of Plaintiff's *Petition* and Paragraph 2(e) of the *Journal Entry of Judgment*, in a tract of land 350' by 340' in the Southeast Quarter of the Northwest Quarter (SE1/4 NW1/4) of Section 8, Township 26 South, Range 33 West of the 6th P.M., Finney County, Kansas."

The pleadings properly alleged Phyllis' mineral interests, and summary judgment was appropriate because there was no genuine issue to those material facts. The district

court did not err in granting Phyllis summary judgment, quieting the title of the property set out in her petition, and ordering an accounting of royalties.

Affirmed.